# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
May 24, 2012 Session

## HERITAGE OPERATING, LP v. HENRY COUNTY PROPANE GAS, INC., ET AL.

### Direct Appeal from the Chancery Court for Henry County
### No. 20641     Ron E. Harmon, Chancellor

### No. W2011-01162-COA-R3-CV - Filed July 23, 2012

The trial court entered an order granting Plaintiff's motion to compel discovery and for discovery sanctions, and stated that the order was final under Tennessee Rules of Civil Procedure 54.02. Defendant did not file a notice of appeal within 30 days of entry of the trial court's order. Plaintiff subsequently filed a notice of voluntary nonsuit. Defendants filed a notice of appeal within 30 days of the trial court's entry of an order of voluntary dismissal, and appeal the trial court's award of discovery sanctions to Plaintiff. We hold that the order awarding sanctions was not an effective final judgment under Rule 54.02. Defendants' appeal accordingly is timely. We vacate the award of sanctions and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Anthony Michael Noel, Brian F. Walthart and George H. Rieger, II, Nashville, Tennessee, for the appellants, Henry County Propane Gas, Inc., Estate of Danny Blakemore and Gorman Hines.

Kevin C. Baltz, R. Charles Wilkin, III and Kara E. Shea, Nashville, Tennessee, for the appellee, Heritage Operating, LP.

## OPINION

The facts relevant to our disposition of this matter on appeal are not disputed. Plaintiff/Appellee Heritage Operating, LP, ("Heritage Operating") is an operating subsidiary

of Energy Transfer Partners, LP, a Delaware limited partnership. Heritage Operating, in turn, does business as Trigas Propane Company ("Trigas"; hereinafter, Plaintiff will be referred to as "Heritage."). In September 2007, Heritage filed a complaint and petition for injunction relief against Henry County Propane Gas, Inc. ("HCPG"), and HCPG employees Danny Blakemore (Mr. Blakemore) and Gorman Hines (Mr. Hines); (collectively "Defendants") in the Chancery Court for Henry County. In its complaint, Heritage alleged that Mr. Blakemore and Mr. Hines were former Heritage delivery drivers who, upon accepting employment with Heritage, had agreed to "refrain from disclosing certain confidential information, including, but not limited to, 'marketing research, pricing information and sales programs.'" Heritage asserted claims against Defendants for misappropriation of trade secrets and tortious interference with business relationships. It prayed for an injunction enjoining HCPG from communicating with Heritage customers and an award of damages. Defendants answered in December 2007, denying allegations of wrong-doing.

Discovery ensued and on April 8, 2009, Heritage sent notices of depositions to be taken on April 21 and 22, 2009, at Tennessee counsel's office in Nashville. Following the April 22 deposition of HCPG's general manager, on June 2, 2009, Heritage filed a motion to compel discovery under Tennessee Rules of Civil Procedure 37.01 and 37.04. In its motion, Heritage alleged that HCPG had failed to produce a witness for the April 22 deposition who was knowledgeable about topics identified in Heritage's notice of deposition. It requested an order compelling discovery and prayed for relief, including the reimbursement of costs, in the amount of $7,087.98. Following responsive pleadings, the matter was heard by the trial court on September 15, 2009. The trial court granted Heritage's motion, and on or about September 22, 2010, Heritage submitted a proposed order granting the motion and purporting to make the judgment final pursuant to Tennessee Rule of Civil Procedure 54.02. On October 2, 2009, HCPG filed an objection to Heritage's proposed order, asserting that, without giving Defense counsel an opportunity to approve the order, Heritage sought to make the order final under Rule 54.02. HCPG asserted that the trial court had made neither finding nor ruling that the order should be entered as a final judgment.

On December 14, 2009, the trial court entered an order granting Heritage's motion to compel and awarding it attorney's fees and costs in the amount of $7,087.98. The trial court reserved other matters and stated, "[p]ursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, this award of costs and attorney['s] fees shall be considered a final judgment in favor of Trigas against HCPG."

On January 14, 2010, HCPG filed a notice of appeal and bond by the Estate of Mr. Blakemore, Mr. Hines, and HCPG. On January 15, 2010, Defendants filed a motion to accept late appeal. On March 8, 2010, Defendants filed a Tennessee Rule of Civil Procedure 60.02 motion to vacate the trial court's December order granting Heritage's motion to

compel. In their motion, Defendants asserted that, as a matter of law, the trial court's December order was not a final judgment because the court did not make an express finding that there was no just reason for delay and did not expressly direct entry of a final judgment. They further argued that there was neither factual nor legal basis upon which to certify the order as a final judgment.

On March 17, 2011, Heritage filed a notice of voluntary dismissal without prejudice pursuant to Tennessee Rule of Civil Procedure 41. The trial court entered an order of voluntary dismissal on April 11, 2011, and Defendants filed a timely notice of appeal to this Court.

### *Issues Presented*

Defendants, (hereinafter, collectively, HCPG) present four issues for our review. The issues presented, as we perceive and reword them are:

(1)     Whether the trial court's order of December 14, 2009, was a final judgment which HCPG failed to timely appeal.

(2)     Whether the trial court erred in awarding Heritage discovery sanctions against HCPG.

### *Discussion*

We must first determine whether we have jurisdiction over this appeal. We have no jurisdiction over an untimely filed appeal. *See*, Tenn. R. App. P. 2; Tenn. R. App. P.4(a); *see also, Cobb v. Beier*, 944 S.W.2d 343, 344 n. 2 (Tenn. 1997). Heritage asserts that, because HCPG failed to timely appeal the trial court's December 2009 order, which purported to be a final judgment under Rule 54.02 of the Tennessee Rules of Civil Procedure, we do not have jurisdiction over this appeal. HCPG, on the other hand asserts that the trial court's December 2009 order was ineffective as a final judgment, and that we accordingly have jurisdiction where HCPG filed a notice of appeal within 30 days of the trial court's April 11, 2011, judgment. Thus, we turn first to whether the trial court's December 14, 2009, order was a final and appealable judgment under Tennessee Rule of Civil Procedure 54.02.

### *Tennessee Rule of Civil Procedure 54.02*

HCPG asserts the trial court's December 2009 order was not an appropriate final judgment and that, even if a request for discovery sanctions can be considered a claim for the purposes of Rule 54.02, the order was ineffectual as a final judgment where it did not comply

with the express requirements of Rule 54.02. Heritage, on the other hand, contends that an order granting sanctions on the basis of a party's conduct is appropriately entered as final under Rule 54.02 where it resolves what is "essentially . . . a claim for damages." Relying on federal court interpretations of Federal Rule 54(b), it further contends that the trial court's failure to make an express finding that there is no just reason for delay of the order as a final judgment does not "doom[] its effect."

Rule 54.02 of the Tennessee Rules of Civil Procedure provides an exception to the "final order" rule in an action that involves more than one claim for relief and/or multiple parties. It states:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

As Heritage asserts, the language and purpose of Rule 54.02 closely track its federal counterpart, Federal Rule of Civil Procedure 54(b). *E.g., Mann v. Alpha Tau Omega Fraternity*, No. W2010–02316–SC–R11–CV, --- S.W.3d ----, 2012 WL 2553534, at *5 (Tenn. July 3, 2012). However, under Tennessee Rule 54.02,

> "as an absolute prerequisite to an interlocutory appeal from such final judgment, the trial judge must certify, first, that the court has directed entry of final judgment as to one or more, but fewer than all of the parties, and, second, make an express determination that there is no just reason for delay."

*Loyd v. State Farm Mut. Auto. Ins. Co.*, 521 S.W.2d 556, 558 (Tenn. 1975)(quoting *Frame v. Marlin Firearms Co., Inc.*, 514 S.W.2d 728, 729-730 (Tenn. 1974)). "'[T]he orderly administration of justice prevents our circumventing mandatory requirements for such interlocutory review.'" *Id*. (quoting *Frame,* 514 S.W.3d at 730). The courts of this State have continued to adhere to the clear requirements of Rule 54.02 that a trial court may direct the entry of a final order as to fewer than all of the claims or parties only if it expressly

directs that the order be made final under the rule and makes an express finding that there is no just reason for delay. *E.g., Carr v. Valinezhad*, No. M2009-00634-COA-R3-CV, 2010 WL 1633467, at \*2 (Tenn. Ct. App. April 22, 2010).

Even if we were to accept Heritage's contention that the trial court's order granting it attorney's fees and costs as discovery sanctions disposed of a "claim" for the purposes of Rule 54.02, the trial court's December 2009 order was ineffective as a final judgment under the rule. We will dismiss an appeal of an order that does not contain the required express finding that no just reason for delay exists. *Id.* (citing *Fagg v. Hutch Mfg. Co.*, 755 S.W.2d 446, 447 (Tenn. 1988)). Accordingly, HCPG did not fail to timely appeal a final judgment, but filed a timely notice of appeal following entry of the trial court's final judgment on April 11, 2011. We accordingly turn to whether the trial court erred by awarding Heritage discovery sanctions in excess of $7,000.

### The Award of Sanctions

We review a trial court's decision regarding the imposition and choice of discovery sanctions under an abuse of discretion standard. *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 356 (Tenn. Ct. App. 2009)(citations omitted). Under this standard, we will uphold a trial court's ruling "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). An abuse of discretion occurs when the trial court "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, the appellate court may not substitute its judgment for the judgment of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The trial court's discretionary decision to award sanctions will not be set aside unless the trial court has misapplied or misconstrued the controlling legal principles or its determinations are inconsistent with the substantial weight of the evidence. *Id.* (citation omitted).

The trial court's discretion however, does not free it from its "responsibility to exercise reason and judgment." *Langlois*, 332 S.W.3d at 357. We have recognized that a trial court's discretionary decisions "'are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Id.* (quoting *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008)(quoting *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). "A discretionary decision will not stand if the trial court fails to apply the relevant statutory, legal, or procedural framework intended to guide its determination." *Id.* (citing *id.*).

In its June 2009 motion to compel discovery, Heritage alleged that, on April 8, 2009, Tennessee counsel for Heritage issued a deposition notice to Eric Small (Mr. Small), president of HCPG, requesting that he appear on April 21, 2009, at 9:00 a.m., at counsel's office in Nashville to provide deposition testimony. It further alleged that, also on April 8, 2009, Tennessee counsel for Heritage issued a deposition notice to HCPG requesting that a representative(s) of HCPG appear on April 22, 2009, at 9:00 a.m. at counsel's office in Nashville to provide deposition testimony concerning a list of topics contained in exhibit A to the deposition notice. Exhibit A contained a list of 50 topics. Heritage asserted that, on April 19, 2009, Heritage counsel Brian L. Mitchell (Mr. Mitchell) traveled from Oklahoma to Tennessee to depose Mr. Small and a representative of HCPG, and that at approximately 1:55 p.m. on April 21, 2009, counsel for HCPG ("Defense counsel') contacted Mr. Mitchell in Nashville to advise him that he was reviewing the deposition notice and that HCPG claimed privilege with respect to several of the items contained in Exhibit A. Heritage alleged that discussion ensued between counsel with respect to the topics asserted as privileged, and that Defense counsel stated that he had not sought a protective order from the trial court, but hoped that questioning about topics asserted as privileged could be limited. Heritage asserted that Mr. Mitchell advised Defense counsel that he would not agree to continue the deposition and advised him to seek a protective order or raise whatever objections he deemed appropriate during the deposition.

Heritage further asserted in its motion to compel that Kenneth E. Walker (Mr. Walker) appeared as the HCPG representative at the April 22, 2009, deposition. It asserted that a 30 minute break was taken at the beginning of the deposition for Defense counsel to meet with Mr. Walker to discuss the scope of Mr. Walker's knowledge of the deposition topics; that Mr. Walker had not discussed the deposition topics with anyone other than counsel; and that Mr. Walker had not reviewed the deposition notice and list of topics until the afternoon of April 21, 2009, the day before the deposition. Heritage alleged that Mr. Walker testified that he was not knowledgeable and prepared to testify about 13 of the 50 deposition topics contained in Exhibit A. It further alleged that Defense counsel acknowledged that Mr. Walker was unable to testify to these topics, and that there were additional HCPG representatives who would have to testify to these topics. Heritage alleged that it had incurred attorney's fees and costs in the "aggregate sum" of $7,087.98, and argued that it was entitled to reimbursement of this amount under Tennessee Rules of Civil Procedure "3701 and 3704." Heritage prayed the court to grant its motion to compel and for an award of any and all other relief to which it may show itself to be entitled. It attached Mr. Walker's deposition to its motion.

HCPG filed a response in opposition of Heritage's motion on July 14, 2009. In its response, HCPG asserted that Heritage "unilaterally terminat[ed]" the April 22 deposition and that, contrary to Heritage's assertions, HCPG fulfilled its duties under Tennessee Rule

of Civil Procedure 30.02(6) to provide a knowledgeable and well-prepared witness. HCPG asserted that the deposition was terminated as a result of "Heritage's failure to specify the [d]eposition topics with reasonable particularity, as well as by unreasonable deposition tactics on the part of its lawyer." HCPG submitted that Heritage issued a deposition notice on April 8, 2009, requiring HCPG to provide a witness or witnesses to testify to a "staggering 50 items" that "broached virtually every issue that may be relevant to the case."

HCPG asserted that Defense counsel received the deposition notice on or about April 15, 2009. It asserted that, in preparation for the April 22 deposition, Defense counsel met with Mr. Walker and HCPG corporate counsel for more than six hours to review the allegations, defenses, and more that 890 pages of discovery documents previously generated in the case. HCPG asserted that meetings to prepare for the deposition followed prior meetings with Mr. Walker earlier in the course of the litigation. HCPG asserted that Mr. Walker had been employed by HCPG's parent company, United Propane Gas, Inc. ("UPG") for more than 20 years, and that for the previous 10 years he had been the general manager of UPG and HCPG. HCPG argued that Mr. Walker had testified at the deposition that his answers would be binding on HCPG.

In its response, HCPG contended that Heritage's counsel "lost his composure early in the [d]eposition and was never able to regain it." HCPG argued that counsel for Heritage spent much of the four hour deposition questioning Mr. Walker's preparation rather than on the topics contained in Exhibit A. It further argued that Heritage's out-of-town counsel should not be awarded expenses and travel costs because the parties had contemplated additional depositions and because counsel undisputedly had traveled from Oklahoma for additional, unrelated matters.

It is undisputed that HCPG produced the general manager of UPG and HCPG, Mr. Walker, to testify at the April 22 deposition. It also is undisputed that Mr. Walker testified that he first saw the notice of the deposition the day before the deposition was scheduled to occur, and that he was told that he would appear as HCPG's witness approximately 10 days prior to the deposition. When asked at the deposition whether he was knowledgeable and prepared to testify to each one of the topics contained on Exhibit A, Mr. Walker replied, "[t]here are certain topics here which I do not have the knowledge to testify to." Mr. Walker stated that he was unable to testify to items 28, 29, 30, 31, 32, 35, 41, 42, 43, 47, 48, 49, and 50. These items are:

(28)   Knowledge relating to any Trigas customer solicited by HCPG from September 11, 2006 to present.

(29)   Knowledge relating to any Trigas customer that switched service to

HCPG from September 11, 2006 to present.

(30) Knowledge relating to the gross income received by HCPG relating to any Trigas customer that switched service to HCPG from September 11, 2006 to present.

(31) Knowledge relating to the net income received by HCPG relating to any Trigas customer that switched service to HCPG from September 11, 2006 to present.

(32) Knowledge relating to the price per gallon charged by HCPG to any Trigas customer that switched service to HCPG from September 11, 2006 to present.

(35) Knowledge relating to the methodology utilized by HCPG to determine the price per gallon to charge customers [sic] Trigas customers that switched service to HCPG from September 11, 2006 to present.

(41) Knowledge relating to any Trigas business information either submitted to or discussed with HCPG by Danny Blakemore.

(42) Knowledge relating to any Trigas business information either submitted to or discussed with HCPG by Gorman Hines.

(43) Knowledge relating to the Trigas Code of Business Conduct.

(47) Knowledge relating to the HCPG preapproved weekly or monthly rate per gallon from January 1, 2006 to present.

(48) Knowledge relating to Exhibit Nos. 1-11 of the Deposition of Gorman Hines taken on or about April 15, 2008.

(49) Knowledge relating to any instance in the last thirty-six (36) months of UPG, HCPG or any entity with substantially common ownership advertising propane below its laid-in cost in the State of Tennessee.

(50) Knowledge relating to any instance in the last thirty-six (36) months of UPG, HCPG or any entity with substantially common ownership selling propane below its laid-in cost in the State of Tennessee.

Mr. Mitchell next questioned Defense counsel regarding whether there was a witness available at the deposition who was able to testify to those items, and Defense counsel responded that he and Mr. Walker had covered "most everything" the day before and that he would have knowledge about some of the topics. A somewhat lengthy conversation ensued between counsel with respect to the extent of Mr. Walker's knowledge and understanding of Mr. Mitchell's question, followed by Mr. Mitchell's questioning of Mr. Walker with respect to his preparation for the deposition.

Upon review of the deposition, we note that a lengthy deposition then ensued with respect to whether HCPG had access to or utilized any confidential information of Heritage to which Mr. Blakemore or Mr. Hines might have had access. When asked whether he had any proof that HCPG did not use Trigas's customer payment history information to solicit Trigas customer's, Mr. Walker replied, "I have no proof that we did not." When asked whether HCPG used information concerning Trigas's pricing strategies to solicit customers, Mr. Walker replied, "Not to my knowledge." When questioned whether he had any evidence that HCPG did not use Trigas's pricing strategies to solicit Trigas's customers, Mr. Walker replied, "I have no way of saying ---- we deny that we did." Additionally, Mr. Walker testified that the prices at which competitors were selling their product was generally known, and that HCPG prices were set by Mr. Small based on strategies set by him. Mr. Walker also testified that HCPG could not determine the price Trigas charged a particular individual customer without being provided the information by the customer, and that such knowledge might give a competitor an advantage. When asked whether HCPG had at any time used information concerning Trigas customer gas usage to solicit the business of Trigas customers, Mr. Walker replied, "Not to my knowledge." When asked how HCPG could determine what a competitor is charging for propane gas, Mr. Walker replied, "[p]ick up the phone and call them. . . . anybody can find out what your competition is doing."

When asked "what are the names of all the Trigas customers that switched service to HCPG from September the 11th of '06 to present," Mr. Walker replied that he did not have a list other than that which was provided in documents by counsel. Mr. Walker stated that he could not "name them off the top of [his] head," and that he did not have a list other than that provided in the documents submitted. Mr. Mitchell then chose to discontinue the deposition, stating it was "clear that Mr. Walker [wasn't] prepared to testify to the topics [] contained in the Notice of Deposition."

In its brief, HCPG asserts that, despite Mr. Walker's experience and counsel's assurances that he had knowledge of the topics itemized in Heritage's notice of deposition, counsel chose not to question Mr. Walker about most of the topics listed in Exhibit A, including topics about which Mr. Walker clearly was knowledgeable. HCPG further asserts that the line of questioning at the deposition was framed to ask Mr. Walker to prove a

negative. HCPG additionally asserts that the recovery sought by Heritage includes amounts incurred for travel on an unrelated legal matter, and that it also includes costs for the deposition of Mr. Small. HCPG further asserts that Mr. Walker's testimony indicates that certain information requested by Heritage simply was not available to HCPG. Additionally, HCPG challenges the reasonableness and clarity of the 50 item list, which includes "knowledge relating to the Trigas Code of Business Conduct" and "knowledge relating to all competitors of HCPG."

We have held that the Rules provide trial courts with

> broad discretion to fashion sanctions for discovery abuses that are commensurate with the parties' conduct . . . . The nature of the sanction depends upon (1) the party's reasons for failing to provide the requested discovery, (2) the importance of the information sought to be discovered, and (3) the time needed to respond effectively to the information.

*Pettus v. Hurst*, 882 S.W.2d 783, 787 (Tenn. Ct. App.1993) (citations omitted). In its December 2009 order granting Heritage discovery sanctions, the trial court made no findings, however, with respect to the alleged discovery abuses, the reasonableness of the process, or the fees and costs attributable to the April 22 deposition. Additionally, the only ground for the sanctions sought by Heritage was that HCPG had failed to produce a witness that could testify at the April 22, 2009, deposition to each and every item on the list of 50 topics attached to Heritage's deposition notice. That list, according to the certificate of service contained in the record, was served on HCPG on April 9, 2009, by United States mail. Heritage does not dispute that it was received by Defense counsel on or about April 15, 2009. The trial court made no findings with respect to the extent to which HCPG failed to provide the requested discovery, the importance of the information sought, or the reasonableness of the knowledge demanded.

As noted above, the deferential abuse of discretion review does not relieve the trial court from, in fact, exercising its sound discretion. Upon review of the order contained in the record, we are unable to determine the basis upon which the trial court based its decision. The trial court made no findings of fact and did not provide any reasoning to support its determination.

Rule 52.01 of the Tennessee Rules of Civil Procedure, as amended effective July 1, 2009, provides:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the

entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

As the concurrence in *Estate of Thompson* recently observed:

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." I*n re: K.H.*, No. W2008–01144–COA–R3–PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App.2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App.1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision ." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re: M.E.W.*, No. M2003–01739–COA–R3–PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)).

*In re: Estate of Thompson*, No. M2011–00411–COA–R3CV, 2012 WL 912859, at *19 (Tenn. Ct. App. Mar. 14, 1212)(Stafford, J., concurring). The judgment in this case simply contains no findings or reasoning to demonstrate that the trial court exercised its discretion in this case.

### *Holding*

In light of the totality of this record, we vacate the order of the trial court insofar as it awards sanctions to HCPG. We remand this matter to the trial court for findings and further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to the Appellee, Heritage Operating, LP, and one-half to the Appellants, Henry County Propane Gas, the Estate of Danny Blakemore, and Gorman Hines, and their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE