IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2012 Session

DEBORAH MASON HAWKINS, AS ADMINISTRATRIX OF THE
ESTATE OF WAYNE HAWKINS, Deceased, And DEBORAH MASON
HAWKINS, INDIVIDUALLY v. RODNEY A. MARTIN, M.D., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-003204-10     John R. McCarroll, Judge

No. W2011-02318-COA-R3-CV - Filed July 24, 2012

The trial court granted Defendants' motion to dismiss in this medical malpractice action where Plaintiff failed to attach a HIPPA compliant medical authorization to her notice to Defendants prior to filing her complaint as required by Tennessee Code Annotated § 29-26-121. Plaintiff appeals. We vacate and remand for further proceedings.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Darrell J. O'Neal, Memphis, Tennessee, for the appellants, Deborah Mason Hawkins, As Administrator of the Estate of Wayne Hawkins, Deceased, and Deborah Mason Hawkins, Individually.

J. Kimbrough Johnson and Elizabeth T. Collins, Memphis, Tennessee, for the appellee, Rodney A. Martin, M.D.

Brett A. Hughes and Kannon C. Conway, Memphis, Tennessee, for the appellee, Baptist Memorial Hospital.

OPINION

This appeal arises from a medical malpractice action commenced in June 2010. The facts relevant to our disposition of this appeal are not disputed. On March 9, 2010, counsel for Plaintiff Deborah Mason Hawkins (Ms. Hawkins), acting individually and in her capacity

as administrator of the Estate of Wayne Hawkins, deceased, sent notice of a potential claim to Baptist Memorial Hospital ("Baptist Hospital"), Charles M. Smith, M.D. ("Dr. Smith"), Christopher B. Green, M.D. ("Dr. Green"), and Rodney A. Martin, M.D. ("Dr. Martin"). On June 25, 2010, Ms. Hawkins filed a complaint in the Circuit Court for Shelby County against Defendants Baptist Hospital and Dr. Martin (collectively, "Defendants"). In her complaint, Ms. Hawkins stated that she had complied with Tennessee Code Annotated § 29-26-121, and alleged that Defendants' medical malpractice proximately caused injuries to and the death of her husband, Wayne Hawkins. She attached to her complaint the Certificate of Good Faith required by Tennessee Code Annotated § 29-26-122, and copies of the pre-claim notice letters to Defendants required by Tennessee Code Annotated § 29-26-121. In August 2010, Defendants filed motions to dismiss based on Ms. Hawkins' failure to comply with section 29-26-121. In their motions, Defendants asserted that Ms. Hawkins' notice letters were not compliant with the statutory requirements where they failed to include a HIPPA compliant medical authorization as required by section 29-26-121. Ms. Hawkins responded and asserted that the motions should be denied where she had substantially complied with the notice requirements. Ms. Hawkins relied on *Howell v. Claiborne and Hughes Health Center*, No. M2009-01683-COA-R3-CV, 2010 WL 2539651(Tenn. Ct. App. June 24, 2010) in support of her argument that the underlying purpose of the statute had been met where Defendants were given notice of Ms. Hawkins' potential claim and a Certificate of Good Faith had been filed ensuring that the claim had merit. On September 8, 2010, Ms. Hawkins filed a supplemental response contending that Defendants had not been prejudiced as a result of her failure to include a HIPPA compliant authorization form with her June notices. She attached to her response HIPPA compliant authorization forms sent to Defendants on September 3, 2010.

Following a hearing on September 30, 2010, the trial court found that Ms. Hawkins had failed to provide HIPPA compliant medical authorizations with her pre-claim notice letters as required by Tennessee Code Annotated § 29-26-121(a)(2)(E). The trial court also found that Ms. Hawkins had not shown "extraordinary cause" to excuse compliance as permitted by section 29-26-121(b) in her responses to Defendants' motions to dismiss, but that she had requested that the trial court permit her to demonstrate extraordinary cause. The trial court found that a significant witness on this issue, Darrell J. O'Neal (Mr. O'Neal), the lead attorney of record, was unavailable because he had been deployed to Afghanistan as a member of the United States military. The trial court accordingly stayed the matter pending the availability of Mr. O'Neal. On August 10, 2011, the trial court entered a scheduling order finding that Mr. O'Neal had concluded his military deployment. The trial court set the matter to be re-heard on September 8, 2011.

Following the September 8 hearing, the trial court granted Defendants' motions to dismiss. The trial court again found that Ms. Hawkins had failed to provide HIPPA

compliant authorizations prior to filing her complaint, and that she had not asserted that extraordinary cause excused compliance in her responses to Defendants' motions to dismiss. The trial court further found that the reasons provided by Mr. O'Neal at the September 8 hearing did not amount to extraordinary cause justifying excuse from the statute in light of the applicable case law. The trial court attached the transcript of the hearing on the motion to its judgment, incorporating it by reference in its order. The trial court entered judgment dismissing the matter on September 30, 2011, and Ms. Hawkins filed a timely notice of appeal to this Court.

### *Issues Presented*

The issues presented for our review, as we perceive and re-word them, are:

(1)     Whether the trial court abused its discretion by not excusing Ms. Hawkins from the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E).

(2)     Whether the trial court erred by failing to construe Ms. Hawkins' complaint liberally.

(3)     Whether the trial court erred by granting Defendants' motion to dismiss when it considered matters outside the pleadings.

### *Discussion*

We begin our discussion with Ms. Hawkins' assertions that the trial court failed to construe her complaint liberally and erred by considering the question of the HIPPA compliant authorization where it was a matter outside of the complaint. We note, as an initial matter, that Ms. Hawkins averred that she had complied with Tennessee Code Annotated § 29-26-121 in her complaint. Notwithstanding that averment, and the March notices to Defendants attached to the complaint, we will consider a motion to dismiss as a motion for summary judgment when a trial court considers matters outside of the pleadings. *Adams TV of Memphis v. ComCorp of Tenn.*, 969 S.W.2d 917, 920 (Tenn. Ct. App.1997). Therefore, where it is necessary to review the record, we view the evidence in a light most favorable to the nonmoving party. *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In this case, Ms. Hawkins acknowledges in her brief that the HIPPA compliant authorizations "might" not have been sent to Defendants. However, the record contains no proof to dispute Defendants' assertion that they were not. Mr. O'Neal testified at the September 2011 hearing on the matter that he had obtained a signed HIPPA compliant

authorization form from Ms. Hawkins and that was in his file. He acknowledged, however, that he "[could] not say, with certainty, that [he], in fact, sent the medical authorization" to Defendants. Upon review of the record, we note that no HIPPA compliant authorization was attached to Ms. Hawkins' complaint, and neither the affidavits nor notices attached to Ms. Hawkins' complaint reference a HIPPA compliant authorization. The only authorization complying with section 29-26-121(a)(2)(E) contained in the record is the one sent to Defendants in September 2010, after Defendants filed their motions to dismiss. Mr. O'Neal's assertion that the authorization "might" have been sent does not constitute proof that it was.

We accordingly turn to whether the trial court erred in granting Defendants' motions to dismiss. In her brief, Ms. Hawkins appears to argue that her complaint, liberally construed, presents a *prima facie* claim of medical malpractice and, therefore, should not have been dismissed. Upon review of the record, we find no error on the part of the trial court with respect to construing Ms. Hawkins' complaint. The only issues before the trial court were whether Ms. Hawkins failed to comply with section 29-26-121(a)(2)(E) and, if so, whether that failure should be excused for extraordinary cause pursuant to section 29-26-121(b).

Section 29-26-121 provides, in relevant part:
(a)(1) Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.
> (2) The notice shall include:
>> (A) The full name and date of birth of the patient whose treatment is at issue;
>> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
>> (C) The name and address of the attorney sending the notice, if applicable;
>> (D) A list of the name and address of all providers being sent a notice; and
>> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.
> . . . .
(b) If a complaint is filed in any court alleging a claim for medical

malpractice, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section *only* for extraordinary cause shown.

Tenn. Code Ann. § 29-26-121(a) & (b)(Supp. 2011)(emphasis added). Thus, the statute allows the trial court to excuse compliance with the mandatory requirements of subsection (a) only upon a showing of extraordinary cause.

We have noted that the legislative intent of section 29-26-121 is "to provide notice to health care providers of potential claims against them so that they might investigate the matter and perhaps settle the claim[.]" *Howell v. Claiborne and Hughes Health Ctr.*, No. M2009-01683-COA-R3-CV, 2010 WL 2539651, at *16 (Tenn. Ct. App. June 24, 2010)(citations omitted). Ms. Hawkins asserts that, in this case, she substantially complied with the intent of the statute and Defendants were not prejudiced by her failure to include a HIPPA compliant authorization. She submits that Dr. Martin was the only physician sued and that he obviously had access to his own records. She further asserts that she substantially complied with the statutory requisites, and this substantial compliance satisfies the legislative intent of providing notice of a potential claim.

These arguments must fail for two reasons. First, we have held that a showing that the defendant was not prejudiced by non-compliance with the subsection 121(a) does not excuse such non-compliance under the express plain language of the statute. *See Myers v. AMISUB (SFH), Inc., d/b/a St. Francis Hospital, et al.,* No. W2010-00837-COA-R9-CV, 2011 WL 664753, at *8 (Tenn. Ct. App. Feb. 24, 2011)(*perm. app. granted* Aug. 23, 2011). Second, we have held that substantial compliance with the "spirit" of the statute is not sufficient to satisfy its mandatory language. *DePue v. Schroeder*, No. E2010–00504–COA–R9–CV, 2011 WL 538865, at *8 (Tenn. Ct. App. Feb.15, 2011). Section 29-26-121(a)(2) contains a list of elements which a potential claimant "shall" provide when notifying healthcare providers of a potential claim. We have held that its language is mandatory. *Id.* Additionally, in addition to the data which must be contained in the notice, the section mandates that a potential claimant provide potential defendants with HIPPA complaint authorizations so that they might fully investigate the matter in order to possibly settle a meritorious claim. Ms. Hawkins failed to provide such authorization.

Ms. Hawkins also asserts that the trial court should have fashioned a less drastic remedy by allowing the HIPPA compliant authorization to be submitted late. The mandatory language of the statute, however, gives the court discretionary authority to excuse compliance only upon a showing of extraordinary cause. The statute does not permit the trial court to

fashion additional or alternative remedies, and we have held that failure to comply with the statutory requirements will result in dismissal of the action. *Id.* (citing *Long v. Hillcrest Healthcare–West*, 2010 WL 1526065 (Tenn. Ct. App. Apr.16, 2010). Moreover, Ms. Hawkins' attempt to remedy the matter by sending HIPPA authorizations to Defendants in September 2010 does not serve to cure the statutory breach. In *DePue*, we held that the plaintiff's complaint was barred where it was filed 53 days after plaintiff sent the requisite notices to defendants, seven days sooner than is permitted by section 20-26-121(a)(1). We held that the timing of the section is mandatory. *Id.* Ms. Hawkins' late provision of the HIPPA complaint authorization simply does not cure her failure to provide authorization before filing the lawsuit.

We accordingly turn to whether the trial court abused its discretion by determining that Ms. Hawkins failed to demonstrate that extraordinary cause existed to excuse compliance with section 29-26-121(a)(2)(E). When reviewing a trial court's discretionary decision, we will uphold the ruling "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). An abuse of discretion occurs when the trial court "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, the appellate court may not substitute its judgment for the judgment of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

The trial court's discretion however, does not free it from its "responsibility to exercise reason and judgment." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009)(citations omitted). We have recognized that a trial court's discretionary decisions ""are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles."" *Id.* (quoting *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008)(quoting *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). "A discretionary decision will not stand if the trial court fails to apply the relevant statutory, legal, or procedural framework intended to guide its determination." *Id.* (citing *id.*).

At the September 2011 hearing of this matter, Ms. Hawkins asserted that Mr. O'Neal's circumstances in March 2010 constitute extraordinary cause. Mr. O'Neal testified at the hearing that he is a solo practitioner and a reservist in the Army; that he received Ms. Hawkins' case in December 2009; and that in January 2010 he received notice that he was being deployed by the Army to Iraq. He further testified that in February 2010 he received notice that he was to be deployed to Afghanistan, and that he began looking for another

attorney to maintain his office. Mr. O'Neal testified that in March 2010 he was training for the up-coming deployment and was "probably out of the office more than [he] was in the office[.]" He testified that he was not aware that the HIPPA authorizations had not been received by Defendants, and that in June 2010 he prepared the complaint, notice of deposition, interrogatories, and requests for production of documents, in addition to the petition, which were filed on June 25. He testified that while he was in the process of training for deployment, he contracted with LaShawn Williams (Ms. Williams), who represented Ms. Hawkins at the September 2010 hearing on Defendants' motion to dismiss. Mr. O'Neal testified that he was in Afghanistan when he received an e-mail from Ms. Williams notifying him that Defendants had filed a motion to dismiss. He testified that he knew he had obtained a medical authorization; that he instructed Ms. Williams to search the file; and that Ms. Williams found the authorization in the file. Mr. O'Neal testified that he believed he had sent the authorization, but that he could not testify with certainty that he had. He stated, "but for my mission, I would be sitting here saying that these people are lying. But I can't say that with certainty, because of my being deployed." Upon cross-examination, Mr. O'Neal acknowledged that the authorization form in his file was not dated, but that it was signed in December 2009. He testified, "I can't say with certainty, that I put, with specificity, every document that's enclosed inside of the letter." He further testified that his secretary mailed the notice letter, and that her affidavit did not reference the medical authorization. At the conclusion of his testimony, Mr. O'Neal observed that the legislature had fashioned section 29-26-121 as a "shield" against frivolous claims, but that Defendants had used it as a "sword." He asserted that, had they been acting in good faith to resolve the case, Defendants should have "pick[ed] up the phone and [said], 'hey, you sent me everything, but you didn't send me the health information form.'"

The trial court stated that he agreed with Mr. O'Neal's interpretation of the statute, but that the "problem that exist[ed]" was this Court's prior holdings. The trial court stated, "both *Depue* and the Opinion written by Judge Farmer, in *Myers vs. AMISUB*, don't give me a lot of leeway. They don't give me much choice I don't think." The trial court stated that it believed its "hands [were] tied" by our decisions in *DePue* and Myers, and that these cases stood for the proposition that "attorney oversight, whether it's because you're going to Afghanistan or whatever, is not even good cause and doesn't rise to the level of extraordinary cause." The trial court further stated,

> I don't think it's right. I think, in your situation, that this is the wrong result. But I'm doing it because I understand Tennessee law to be different.
>
> So, if you appeal it and you reverse me, you will see a smile on my face, and I will be very, very glad to see you come back.

We must disagree with the trial court that either *DePue* or *Myers* compels, as a matter of law, the decision reached in this case. The plaintiffs in those cases could forward no justification for attorney oversight, but merely asserted that noncompliance with the statute should be excused where the defendants had actual notice of the claim and were not prejudiced by the lack of compliance. In *DePue*, plaintiff's counsel stated that she had misread or misunderstood the statutory provision extending the statute of limitations, and that she had filed the complaint prior to the expiration of 60 days by oversight. *DePue*, 2011 WL 5388645, at *8. The plaintiff in *Myers* argued that section 29-26-121 was not applicable in that case because plaintiff's original claim, followed by a voluntary nonsuit, provided defendants with ample notice of the re-filed claim against them. The *Myers* plaintiff asserted that the trial court was "'justified in waiving'" the statutory requirements "'due to the previous two years of litigation.'" *Myers*, 2011 WL 664753, at *8-9. In neither *DePue* nor *Myer*s did plaintiffs assert good cause, much less unique, extraordinary circumstances, that would excuse compliance.

Section 29-26-121(b) authorizes the trial court to excuse compliance with the section when, in the exercise of its sound and reasoned discretion, the trial court finds that noncompliance resulted from extraordinary cause. "Extraordinary cause," however, is not defined by the statute. We have held that mere attorney oversight, unaccompanied by extraordinary circumstances, does not constitute extraordinary cause. We have not held, however, that a trial court does not have the discretion to excuse compliance for attorney oversight caused by unique and extraordinary circumstances. It is the duty of the trial court to weigh the entirety of the circumstances and to determine whether extraordinary cause exists on a case by case basis.

As noted above, under the abuse of discretion standard of review, we will set aside a trial court's decision if it is based on an error of law or the "relevant . . . legal . . . framework." *Langlois*, 332 S.W.3d at 357. Upon review of the record in this case, it is clear that the trial court construed *DePue* and *Myers* as foreclosing the possibility of excuse from the section 29-26-121(a) based on attorney oversight regardless of the attendant circumstances. The trial court accordingly did not exercise its discretion, but perceived it had no discretion in the matter based on its misreading of *DePue* and *Myers*. We disagree with the trial court that this is the legal framework created by *DePue* and *Myers*.

### *Holding*

In light of the foregoing, we vacate the judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this Opinion. Upon remand, the trial court is instructed to exercise its discretion to determine whether, under the totality of the circumstances, extraordinary cause exists under section 29-26-121(b) to excuse

compliance with section 29-26-121(a). Cost of this appeal are taxed one-half to the Appellees, Rodney A. Martin, M.D. and Baptist Memorial Hospital, and one half to Appellant, Deborah Mason Hawkins, As Administratrix of the Estate of Wayne Hawkins, Deceased, and Deborah Mason Hawkins, Individually, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE