# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Submitted On Briefs June 18, 2008 Session

## LLOYD M. PEGUES v. ILLINOIS CENTRAL RAILROAD COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001764-06     D'Army Bailey, Judge**

---

**No. W2007-01983-COA-R3-CV  -  Filed July 22, 2008**

---

Plaintiff failed to comply with the trial court's discovery order to produce two witnesses for deposition within forty-five days, and Defendant moved to dismiss under Tennessee Rule of Civil Procedure 37.02. Plaintiff appeals, asserting the trial court abused its discretion where there was no evidence of willful or dilatory conduct by Plaintiff. We vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and WALTER C. KURTZ, SR. J., joined.

R. Christopher Gilreath, Memphis, Tennessee, for the appellant, Lloyd M. Pegues.

Thomas R. Peters and Michael C. Hermann, Belleville, Illinois, and M. Beth Rainwater, Memphis, Tennessee, for the appellee, Illinois Central Railroad Company.

## OPINION

The only issue presented to this Court on appeal is whether the trial court abused its discretion when it dismissed Plaintiff's cause of action for failure to comply with a pre-trial discovery order. The facts relevant to our disposition on appeal are undisputed. Plaintiff Lloyd M. Pegues (Mr. Pegues) was employed as a switchman for Defendant Illinois Central Railroad ("the Railroad") from 1996 to 2006. In January 2006, Mr. Pegues filed a personal injury action pursuant to the Federal Employers Liability Act ("FELA") against the Railroad in the Circuit Court for Shelby County. In his complaint, Mr. Pegues alleged the Railroad had failed to provide him with a reasonably safe place in which to work and had failed to provide him with appropriate protective clothing and devices to protect him when working around hazardous material. He further alleged that the Railroad failed to warn him adequately concerning the hazards associated with materials with which he came into contact, and that he was, therefore, unable to take appropriate measures to protect himself. Mr. Pegues additionally asserted the Railroad failed to use appropriate ventilation equipment; failed to publish a safety plan; failed to substitute other reasonably available materials

for products containing asbestos and silica; and allowed unsafe handling practices. He asserted the Railroad failed to provide protective devices; failed to test or monitor the work environment; failed to provide locomotives that were in safe working condition; and required employees to work on or near locomotives that were defective because they were contaminated with hazardous materials. He alleged that the Railroad knew or should have known that its facilities, equipment and locomotives contained hazardous materials, and that the exposure to the materials posed a risk to employees. Mr. Pegues alleged that he had endured and will continue to endure physical damages included shortness of breath and reduced lung function as a result of the exposure to hazardous materials, and that he had developed and is at increased risk to develop serious diseases as a result of the exposure. He sought damages in the amount of $750,000.

The Railroad answered and denied Mr. Pegues' allegations of negligence. It also asserted seven affirmative defenses. The Railroad asserted that the proximate cause of any injuries sustained by Mr. Pegues was his own conduct, including smoking; that Mr. Pegues failed to mitigate any alleged damages; that Mr. Pegues' claim was barred by the statute of limitations; that Mr. Pegues failed to use ordinary care for his own safety; that Mr. Pegues failed to seek medical treatment to resolve his alleged injuries; the comparative fault of third parties; and that Mr. Pegues' claim was barred because it had been released.

In November 2006, Mr. Pegues responded to the Railroad's first set of interrogatories. Mr. Pegues included a diagnostic report and letter completed by Dr. James W. Ballard (Dr. Ballard) of Birmingham, Alabama, concluding that Mr. Pegues' medical condition was consistent with asbestosis and silicosis.

The Railroad moved for summary judgment in February 2007. In its motion and statement of facts, the Railroad asserted that the only factual basis offered by Mr. Pegues to support his claim of injury was the diagnosis of asbestosis and silicosis made by Dr. Ballard. The Railroad asserted that Mr. Pegues had not sought medical treatment since Dr. Ballard's diagnosis, and that "Dr. Ballard [had] been irrefutably discredited as a physician able to provide a diagnosis of asbestosis or silicosis. . . ." The Railroad asserted that Dr. Ballard had been discredited in multi-district litigation in federal court, which concluded that his diagnoses and findings were unreliable and that a dual diagnosis of asbestosis and silicosis in the same person was "virtually medically impossible." The Railroad further asserted that Dr. Ballard had been subpoenaed to testify at Congressional hearings on mass tort screenings, and that he had invoked his Fifth Amendment rights against self-incrimination. The Railroad also asserted that Dr. Ballard had opposed its efforts to depose him in another pending FELA action, and that he consistently had invoked his Fifth Amendment rights. The Railroad attached to its motion a 2005 report of the Claims Resolution Management Corporation removing several physicians and facilities, including Dr. Ballad, from its list of acceptable doctors and facilities. The Railroad also attached on order issued by the United States District Court for the Southern District of Texas discrediting the findings and diagnoses of Dr. Ballard in the multi-district litigation. It asserted that Mr. Pegues had therefore failed to offer any credible evidence of causation.

The trial court issued a scheduling order on April 3, 2007. The court's order included orders that Plaintiff designate expert witnesses by August 1, 2007; that parties exchange preliminary witness lists by October 1, 2007; and that all designated witnesses shall be made available for discovery deposition upon request. Trial was set for January 22, 2008.

On or about April 16, 2007, Mr. Pegues responded to the Railroad's statement of facts. In his response, Mr. Pegues asserted that Dr. Ballard had not diagnosed him with both asbestosis and silicosis, but had simply indicated that the medical findings were consistent with both conditions. Mr. Pegues also disputed the Railroad's assertion that Dr. Ballard had provided the only medical evidence in the case, and asserted that Dr. Donald Breyer (Dr. Breyer) had also provided medical evidence of asbestosis and silicosis.

The Railroad's motion for summary judgment was heard on April 19, and the trial court denied the motion by order entered April 26, 2007. The trial court ordered Mr. Pegues to produce Dr. Ballard and Dr. Breyer for deposition within forty-five days of entry of its April 26, 2007, order.

On June 22, 2007, the Railroad moved to dismiss Mr. Pegues' action under Tennessee Rule of Civil Procedure 37.02(C) for failure to comply with the trial court's April 26 order to produce Dr. Ballard and Dr. Breyer for deposition. Mr. Pegues responded to the Railroad's motion to dismiss on July 12, 2007. In his response, Mr. Pegues asserted that counsel for Dr. Ballard had advised him that Dr. Ballard was "unwilling to sit for deposition" and would assert his Fifth Amendment rights to refuse to answer any questions which might be posed in a deposition. Mr. Pegues further asserted that he had informed the court that he did not intend to rely on Dr. Ballard. Mr. Pegues stated that Dr. Breyer had been unavailable for deposition due to illness. He attached correspondence from Dr. Breyer dated May 14, 2007, in which Dr. Breyer stated that he was physically unable to sit for deposition but anticipated being available beginning August 1, 2007. Following a hearing on July 13, 2007, the trial court granted the Railroad's motion and dismissed the matter pursuant to Tennessee Rule of Civil Procedure 37.02(C). Mr. Pegues filed a timely notice of appeal to this Court. We vacate and remand.

### Issue Presented

The issue as presented by Mr. Pegues for our review is:

Was it an abuse of discretion for the trial court to dismiss Plaintiff's case with prejudice pursuant to Rule 37.02(C) of the Tennessee Rules of Civil Procedure for failure to produce two witnesses for discovery deposition without a record of dilatory conduct?

### Standard of Review

Appellate courts review a trial court's decision to impose sanctions and its determination of the appropriate sanction under an abuse of discretion standard. *Alexander v. Jackson Radiology*

*Assoc., P.A.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)(citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988)). An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party. *Id.* (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)). Discretionary decisions, however, "are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)(quoting Martha S. Davis, Standards of Review: Judicial Review of Discretionary Decisionmaking, 2 J. App. Prac. & Process 47, 58 (2000) (citations and internal quotation marks omitted)). Thus, an abuse of discretion may be found "'when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination.'" *Id.* (quoting 2 J. App. Prac. & Process at 59).

### *Analysis*

Tennessee Rule of Civil Procedure 37.02(C) provides that, where a party or other person designated by the Rule fails to obey an order of the trial court, the court may enter "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]" We begin our analysis of the trial court's dismissal of this matter pursuant to Rule 37.02(C) by observing that, as this Court previously has noted, "the rules governing discovery would be ineffectual absent the trial court's authority to sanction their abuse." *Alexander*, 156 S.W.3d at 15 (citations omitted). Thus, trial courts possess the inherent authority to impose appropriate sanctions in response to an abuse of the discovery process. *Id.* The trial court's determination of the appropriate sanction will be set aside only where the court "has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *Id.*

As we have further observed, however, the inherent powers of the court to impose sanctions are most effective when utilized with discretion and restraint. *Id.* "[T]he punishment must fit the offense." *Id.* "[T]he power to sanction should be used sparingly. It should not be used like a sword and used frequently . . . to do so would diminish the significance when sanctions are imposed." *Id.* Thus, although dismissal is appropriate where there has been intentional disregard of the trial court's orders or where a party has "flout[ed]" the court's discovery order, it is a drastic measure which the court wisely imposes with discretion. *Id.*; *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982)*.* As we noted in *Holt*, "[d]ismissal is a harsh sanction." *Holt*, 638 S.W.2d at 394.

In *Alexander v. Jackson Radiology*, plaintiff Alexander intentionally and surreptitiously took an incriminating exhibit in the course of a deposition. *Alexander v. Jackson Radiology Assoc., P.A.*, 156 S.W.3d 11, 16 (Tenn. Ct. App. 2004). The discovery abuse in that case also included plaintiff's "blatant, inexcusable, repeated lying, under oath, when questioned the next day" about the disappearance of the exhibit. Plaintiff Alexander did not simply deny taking the exhibit, moreover, "but indignantly and aggressively expressed resentment at being questioned about its disappearance

and whereabouts." *Id.* After "carefully consider[ing] the balancing which the court must undertake in determining what sanctions are appropriate under the circumstances," in *Alexander* we held that, "[i]n light of the totality of the circumstances presented [in that case], the trial court did not abuse its discretion when it dismissed [Plaintiff] Dr. Alexander's lawsuit." *Id.* at 17. We agreed with the trial court in that case that "the totality of Dr. Alexander's actions 'offend[ed] the basic principles underlying our judicial system.'" *Id.* We accordingly affirmed the trial court's order of dismissal as sanction for plaintiff's discovery abuse.

*Holt v. Webster* was a medical malpractice action filed in November 1977. *Holt*, 638 S.W.2d at 392. There was no further activity in that case for over a year. In early 1979, counsel for defendant sent written confirmation of a telephone conversation with counsel for plaintiffs regarding the scheduling of the parties' depositions. *Id.* No further action was taken in the matter, however, and in October 1979, the trial court *sua sponte* dismissed the matter upon finding it had been dormant for over a year. *Id.* In November 1979, plaintiffs filed a motion to set aside the order of dismissal, which the trial court granted in December 1979. *Id.* Plaintiffs took no further action and the case remained dormant until January 1981, when defendant served plaintiffs with eleven interrogatories. *Id.* Plaintiffs did not respond, and in May 1981 defendant moved for dismissal under Tennessee Rule of Civil Procedure 37. *Id.* The trial court granted plaintiffs seven days from May 15, 1981, within which to file an answer to defendant's interrogatories and to serve them on defendant. Plaintiffs failed to file an answer with the court until May 28, and failed to serve defendant until June 1. Further, plaintiffs failed to fully answer defendant's first interrogatory regarding expert witnesses who plaintiffs anticipated calling. *Id.* at 392-93.

On June 3, 1981, defendant again moved for dismissal under Rule 37. Following a hearing on the matter, the trial court dismissed the action in July 1981. *Id.* at 393. Plaintiffs filed a motion under Rule 60 of the Tennessee Rules of Civil Procedure seeking reconsideration of the trial court's order. At the hearing of plaintiffs' motion, plaintiffs announced that their motion was not pursuant to Rule 60, but pursuant to Rules 41 and 59. However, plaintiffs did not move for a voluntary nonsuit under Rule 41. The trial court denied plaintiffs' motion under Rule 59. *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982).

Upon review of the record, we found "no plausible justification for plaintiffs' failure to file timely and complete responses to defendant's interrogatories." *Id.* We stated, "[p]laintiffs in the instant case were given considerable opportunity to comply with the [t]rial [c]ourt's orders. Yet we find nothing in the record showing any reason for their failure to respond timely and completely to the order of discovery." *Id.* at 394. Plaintiffs in *Holt* simply disregarded the trial court's order, flouting the authority of the court. *See id.*

In the present case, however, although as counsel for Mr. Pegues conceded at the July 13 hearing his response to the Railroad's motion to dismiss was filed late, the record does not support a conclusion that Mr. Pegues merely disregarded or flouted the trial court's discovery order. Further, as counsel for Mr. Pegues observed at the hearing, discovery was within the bounds of the scheduling order issued by the court in April 2007. Additionally, we note that it is undisputed that

Dr. Ballard has asserted his Fifth Amendment right and that his deposition would be of little or no assistance in this matter. It is also undisputed that Dr. Breyer was unavailable for deposition due to illness, but that he would be available within the time lines originally established by the trial court in its April 2007 scheduling order.

In light of the totality of the record, we do not believe Mr. Pegues' failure to produce witnesses for deposition as ordered by the trial court rises to the level of conduct exhibited in *Alexander* or *Holt*. As noted above, dismissal is a drastic measure to be utilized to sanction and deter abuse of the discovery process and disregard of the authority of the courts. As also noted above, although the trial court has discretion to impose sanctions under Rule 37, its discretion is not unlimited. We are not insensitive to the trial court's frustration with the seeming lack of expert medical proof in this case. However, we do not believe the sanction of dismissal is appropriate where Mr. Pegues has attempted to comply with the trial court's order and is within the scheduling order established by the trial court in April 2007. Although Mr. Pegues' time to obtain competent medical proof is not unlimited, and although we take no position on the merits of Mr. Pegues' claim, we cannot agree with the trial court that the harsh sanction of dismissal was appropriate at this juncture.

### *Holding*

In light of the foregoing, the order of the trial court dismissing this matter is vacated. This cause is remanded for further proceedings. Costs of this appeal are taxed to the Appellee, Illinois Central Railroad Company.

_____
DAVID R. FARMER, JUDGE