IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2025 Session

## MONSIEUR SHAWNELLIAS BURGESS v. BRADFORD HILLS HOA ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 20C1835**  **Joseph P. Binkley, Jr., Judge**
**Roy B. Morgan, Jr., Judge**

_____

### No. M2024-00102-COA-R3-CV

_____

This is a dispute between a neighborhood homeowners' association ("HOA") and a homeowner in the HOA's neighborhood. On remand after a prior appeal, the trial court entered a declaratory judgment in favor of the homeowner. The homeowner appealed the declaratory judgment and then filed multiple motions in the trial court seeking inherent authority sanctions and costs against certain attorneys who had been involved in the case. The trial court denied the motions, and the homeowner appealed those determinations. We affirm the trial court's decisions in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Monsieur Shawnellias Burgess, Nashville, Tennessee, pro se.

Jonathan Cole, Nashville, Tennessee, for the appellee, Joseph P. Binkley, Jr.

Christopher B. Fowler, Nashville, Tennessee, pro se.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This is a consolidated appeal of a case that is before us for the second time. *See Burgess v. Bradford Hills HOA*, No. M2020-01565-COA-R3-CV, 2023 WL 142392 (Tenn. Ct. App. Jan. 10, 2023) (hereinafter, "*Burgess I*"). In July 2020, Monsieur Shawnellias Burgess filed a civil warrant in the General Sessions Court for Davidson

County alleging that the Bradford Hills Homeowners' Association ("the HOA") and Lynn Burka (collectively, "the Defendants"), an employee of the company that managed the HOA, violated the HOA's Covenants, Conditions and Restrictions ("CCRs") by levying fines against him for certain conditions on his property. *Burgess I*, 2023 WL 142392, at *1. The Defendants responded by filing a motion to remove the case to the Circuit Court for Davidson County. *Id.* Attached to the motion for removal was an affidavit of Chris Fowler, an attorney for the Defendants, stating that removal would "'avoid duplicative and unnecessary litigation' because the defendants had 'compulsory counterclaims for (1) an injunction and (2) declaratory judgment to determine the rights, status, and legal relations of the parties.'" *Id.* The general sessions court granted the motion, and the case was assigned to Circuit Court Judge Joseph P. Binkley, Jr. *Id.*

Mr. Burgess then filed a series of amended complaints in the circuit court asserting various causes of action against the Defendants, including an allegation "that the court should assess sanctions against Mr. Fowler under Tenn. R. Civ. P. 11 because the motion to remove the case to the circuit court was not supported by any legal basis." *Id.* at *2. After receiving numerous pleadings and motions from the parties and hearing arguments, the circuit court entered an order dismissing the claims against the Defendants. *Id.* The court determined that the case should be dismissed because the gravamen of Mr. Burgess's complaint was a challenge to the HOA's authority to enforce the CCRs, which could only be brought as a derivative action—a claim that Mr. Burgess failed to assert. *Id.* The court then denied Mr. Burgess's request for Rule 11 sanctions against Mr. Fowler because Mr. Burgess failed to comply with the notice requirement in Tenn. R. Civ. P. 11.03(1)(a).[1] *Id.*

On appeal, this Court determined that the gravamen of Mr. Burgess's complaint was not a challenge to the HOA's authority to enforce its CCRs, but rather, a claim that the HOA should not have fined him because he had not violated the CCRs. *Id.* at *9. Thus, we concluded that the gravamen of his complaint was a request for the court to declare the parties' rights and status under the CCRs—in essence, a declaratory judgment. *Id.* We then vacated the dismissal of the claims against the HOA and Ms. Burka and remanded for further proceedings. *Id.* We affirmed the circuit court's decision in all other respects. *Id.* at *14.

Upon remand, Mr. Burgess filed a motion to amend his complaint to allege due process violations, civil rights claims, and conspiracy claims against Judge Binkley. The

---

[1] Tennessee Rule of Civil Procedure 11.03(1)(a) states as follows:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Tennessee Supreme Court assigned Judge Roy B. Morgan, Jr., to hear the claims against Judge Binkley. On October 25, 2023, Judge Morgan entered an order denying Mr. Burgess's motion to amend because the allegations against Judge Binkley were barred by judicial immunity as they all related to conduct that occurred while he was acting in his judicial capacity. Mr. Burgess did not appeal this decision.

After the motion to amend to add the claims against Judge Binkley was denied, the claims against the HOA and Ms. Burka moved forward in the trial court with the parties filing a plethora of motions and responses. As relevant to this appeal, Mr. Burgess filed a motion entitled "Motion for Court Sanctions Against The Attorneys of Record & Defendants Pursuant To The Court's Inherent Powers To Sanction" on November 30, 2023. Mr. Burgess requested that the court use its "inherent authority" to impose sanctions against the defendants, the attorneys of record (including Mr. Fowler, though he had been permitted to withdraw from representing the HOA at the conclusion of *Burgess I*), and their law firms "for Bad Faith, Frivolous Defenses and misrepresentations in this litigation." The trial court[2] entered an order on December 13, 2023, denying Mr. Burgess's motion because he "failed to comply with the 21-day safe harbor provision of Rule 11.03." The court also found that the Defendants had not "operated in bad faith, nor h[ad] they set forth any frivolous defense or misrepresentation in this litigation that merit imposition of sanctions by the Court."

On the morning of December 15, 2023, Mr. Burgess filed a motion to alter or amend the denial of his motion for sanctions. Later that same day, the trial court entered two orders. The first order denied the motion to alter or amend, and the second order addressed the claims against the HOA and Ms. Burka. In the second order, the trial court applied this Court's mandate to consider Mr. Burgess's arguments in the context of a declaratory judgment action and found that the HOA's CCRs were vague, ambiguous, and invalid as applied to Mr. Burgess. Lastly, the court dismissed Ms. Burka from the lawsuit because she was "no longer necessary to this litigation." Mr. Burgess timely appealed these orders on January 13, 2024, and that appeal was assigned the following case number: M2024-00102-COA-R3-CV.

Following entry of the order declaring that the HOA's CCRs were vague, ambiguous, and invalid as applied to him, Mr. Burgess continued his quest in the trial court for sanctions against Mr. Fowler and his law firm for having the case removed from the general sessions court. On January 5, 2024, Mr. Burgess filed a motion "For Perjury Sanctions" and "Inherent Powers Sanctions For Frivolous Claims/Defenses." He argued that the court should use its "inherent authority" to impose sanctions against Mr. Fowler and his law firm for acting in bad faith or in a reckless manner by filing the affidavit of Mr. Fowler in support of the motion to remove the case to the circuit court. Specifically, Mr. Burgess contended that Mr. Fowler's affidavit was "perjurious and misle[ading]." To

---

[2] References to the trial court in this opinion relate to the matters determined by Judge Binkley.

support his argument, Mr. Burgess relied on the fact that none of the Defendants' attorneys ever filed the alleged compulsory counter claims, an injunction, or a declaratory judgment as stated in Mr. Fowler's affidavit. Mr. Burgess also relied on the declaratory judgment order to argue that the court's findings "destroy[ed] any legal basis" to support Mr. Fowler's "false affidavit." On January 25, 2024, the trial court entered an order denying Mr. Burgess's motion for sanctions, finding that Mr. Fowler and his law firm did not act in bad faith or conduct themselves in a reckless manner when filing Mr. Fowler's affidavit.

Nearly a month later, on February 23, 2024, Jonathan Cole, Judge Binkley's attorney, filed a motion in the trial court requesting entry of a final judgment[3]. Mr. Burgess filed a response and, shortly thereafter, Mr. Cole received notice that a final order had been entered and appealed. Mr. Cole then filed a Notice to Strike the Motion for Entry of Final Judgment on March 11, 2024. The following morning, Mr. Burgess filed a motion seeking costs and sanctions against Mr. Cole and Judge Binkley for having to file a response to "the moot motion" for a final judgment. On April 15, 2024, the Supreme Court assigned Judge Morgan to hear Mr. Burgess's motion for costs and sanctions against Mr. Cole and Judge Binkley.

When Mr. Burgess filed this motion for costs and sanctions, he included Mr. Fowler on the motion's certificate of service. On April 25, 2024, Mr. Fowler filed a response to the motion for costs and sanctions. Mr. Fowler stated in the response that he was filing it "[o]ut of an abundance of caution" and argued that he should not be sanctioned because he was no longer involved in the case. He also included some assertions relating to Judge Binkley having judicial immunity. Mr. Burgess filed a response asserting that Mr. Fowler's response should be stricken because he was "in no position to file anything" as he was not Judge Binkley's attorney and had withdrawn from the lawsuit.

Judge Morgan heard the motion for costs and sanctions on April 30, 2024. Mr. Fowler appeared at the hearing and reiterated to the court that he responded to Mr. Burgess's motion "in an abundance of caution" because the motion was vague as to against whom Mr. Burgess sought costs and sanctions. After Mr. Burgess clarified that the motion was directed only at Judge Binkley and Mr. Cole, Judge Morgan requested that Mr. Fowler strike his response, which Mr. Fowler did. The hearing then continued as to Judge Binkley and Mr. Cole, and Judge Morgan entered an order on May 14, 2024, denying the motion. Mr. Burgess timely appealed, and that appeal was assigned the case number: M2024-00765-COA-R3-CV.

Four days before Judge Morgan entered the May 14, 2024 order, Mr. Burgess filed a motion in the trial court requesting costs and "inherent authority" sanctions against Mr.

---

[3] After Judge Morgan denied the motion to amend to add the claims against Judge Binkley, Mr. Cole was not served with any subsequent pleadings or orders filed in the case between Mr. Burgess and the HOA. As a result, Mr. Cole was unaware that the circuit court had entered the declaratory judgment order and that Mr. Burgess had appealed that order.

Fowler and his law firm for having to respond to Mr. Fowler's "unauthorized response." The trial court entered an order on June 5, 2024, denying the motion based on its finding that Mr. Fowler's response was not filed in bad faith or in a reckless manner. On June 7, 2024, Mr. Burgess filed a motion to alter or amend the order and, on July 1, 2024, he filed a motion titled "Motion for Assignment of Senior Judge To Hear Plaintiff's Motions." The court entered two orders on July 9, 2024. In the first order, the court denied the motion to alter or amend, finding that Mr. Burgess failed to satisfy any of the three circumstances under which a motion to revise may be granted, but rather, was "clearly seeking to relitigate a matter which this Court already adjudicated in its June 5, 2024 order." In the second order, the court concluded that the motion for assignment of a senior judge was, in fact, a motion for recusal and then denied the motion because it failed to satisfy the requirements of Tenn. Sup. Ct. R. 10B, § 1.01. Mr. Burgess timely appealed these orders, and this Court assigned that appeal the following case number: M2024-01020-COA-R3-CV.

On June 14 and July 29, 2024, this Court entered orders consolidating the three appeals filed by Mr. Burgess. In his appellate brief, he states that the following issues are presented for our review:

1. Did the findings of Judge Binkley's Final Order change/modify the law of the case?
2. Did Judge Binkley err by not reading the CCRs which were included as an exhibit in the 1st Amended Complaint when he granted [the] motion[] to dismiss?
3. Did the [general sessions and trial courts] comply with the statutory intent of the legislature regarding T.C.A 16-15-732?
4. Did Judge Binkley err in denying Plaintiff/Appellant's motion for sanctions against Chris Fowler for filing frivolous claims/defenses and his false affidavit?
5. Did Judge Morgan err in denying the motion for inherent authority sanctions for responding to Judge Binkley's motion for a 2nd final order?
6. Did Judge Morgan err in denying Plaintiff/Appellant costs for responding to Judge Binkley's motion for a 2nd final order?
7. Did Judge Binkley err in denying inherent authority sanctions regarding Chris Fowler's unauthorized response filed regarding sanctions for Judge Binkley's filing of a motion for a 2nd final order?
8. Did Judge Binkley err in denying direct cost[s] for responding to Chris Fowler's unauthorized response?
9. Did Judge Binkley err by not recusing himself from ruling on Chris Fowler's unauthorized response?

STANDARD OF REVIEW

We review a trial court's factual findings de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). We review conclusions of law de novo with no presumption of correctness afforded to the trial court's conclusions. *Spearman v. Shelby Cnty. Bd. of Educ.*, 637 S.W.3d 719, 731 (Tenn. Ct. App. 2021).

Several of the issues presented by Mr. Burgess concern sanctions. A trial court's decision regarding the imposition of sanctions is reviewed under the abuse of discretion standard. *Pegues v. Ill. Cent. R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008). A court abuses its discretion when it "applie[s] an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party." *Id.* (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)).

ANALYSIS

As a preliminary matter, we note that Mr. Burgess is a pro se litigant. This Court has stated the following principles about pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). Additionally, we allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the substance, rather than the form or terminology," of their court filings. *Young*, 130 S.W.3d at 63.

I.    Law of the case

We begin our analysis by addressing the first three issues raised by Mr. Burgess: whether the declaratory judgment order changed the law of the case, whether Judge Binkley erred in not reading the CCRs when granting the HOA's and Ms. Burka's motion to dismiss, and whether the general sessions and circuit courts complied with the statutory intent of the statute governing removal, Tenn. Code Ann. § 16-15-732. All three of these issues fall under the umbrella of the law of the case doctrine.

Our Supreme Court has explained the law of the case doctrine, in pertinent part, as follows:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 AM. JUR. 2D *Appellate Review* § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (Tenn. 1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996). The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. *Ladd*, 939 S.W.2d at 90 (citing other authority). The doctrine does not apply to dicta. *Ridley v. Haiman*, 164 Tenn. 239, 248-49, 47 S.W.2d 750, 752-53 (Tenn. 1932); *Ladd*, 939 S.W.2d at 90.
>
> The law of the case doctrine is not a constitutional mandate nor a limitation on the power of a court. 5 AM. JUR. 2D *Appellate Review* § 605 (1995); *Ladd*, 939 S.W.2d at 90. Rather, it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. *Ladd*, 939 S.W.2d at 90 (citing other cases). This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts. *Ladd*, 939 S.W.2d at 90; 5 AM. JUR. 2D *Appellate Review* § 605 (1995); 1B James W. Moore, *Moore's Federal Practice* ¶ 0.404[1] (2d ed. 1995); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 790 (1981).

*Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). In other words, "when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand." *Id.*

Mr. Burgess contends that the trial court erred in entering the declaratory judgment order because, in doing so, the court "change[d]/modif[ied] the law of this case." We disagree. In *Burgess I*, this Court concluded that the trial court erred in granting the HOA's and Ms. Burka's motion to dismiss because "it incorrectly concluded that the gravamen of the amended complaint challenged the authority of the HOA to enforce the CCRs against residents of the subdivision." *Burgess I*, 2023 WL 142392, at *8. We determined that the

- 7 -

case was essentially "a derivative action, which Mr. Burgess failed to [assert]." *Id.* Liberally construing Mr. Burgess's complaint, we concluded that he sought a declaratory judgment "construing the CCRs and 'declar[ing] the rights, status, and other legal relations' of the parties under the CCRs to determine whether Mr. Burgess violated the CCRs." *Id.* at \*9 (quoting Tenn. Code Ann. § 29-14-102). We then vacated the portion of the trial court's order granting the HOA's and Ms. Burka's motion to dismiss and remanded for the court to consider Mr. Burgess's claim against them in the context of a declaratory judgment. *Id.* On remand, the trial court followed our mandate and, after considering Mr. Burgess's arguments in the context of a declaratory judgment, entered the declaratory judgment order concluding that Mr. Burgess did not violate the CCRs. The trial court's order did nothing to change or modify the law of the case. Thus, Mr. Burgess's argument on this issue is unavailing.

As evident from the foregoing discussion, *Burgess I* addressed the issue of whether the trial court erred in granting the HOA's and Ms. Burka's motion to dismiss. The argument Mr. Burgess makes to support his second issue —whether the trial court erred in granting the HOA's and Ms. Burka's motion to dismiss—is based on the same set of facts at issue in *Burgess I*. Furthermore, his argument remains essentially the same—that the trial court erred in granting the HOA's and Ms. Burka's motion to dismiss. Our Supreme Court has recognized that "[t]here are limited circumstances which may justify reconsideration of an issue which was [an] issue decided in a prior appeal," but none of those limited circumstances are present in this case. *Memphis Publ'g Co.*, 975 S.W.2d at 306. The law of the case doctrine, therefore, prohibits us from reconsidering the issue of whether the trial court erred in granting the HOA's and Ms. Burka's motion to dismiss.

The third issue Mr. Burgess raises in this appeal concerns whether the general sessions court and the trial court failed to "comply with the statutory intent of the legislature regarding TCA 16-15-732." In *Burgess I*, we addressed Mr. Burgess's adamant contention that the case should not have been removed from the general sessions court pursuant to Tenn. Code Ann. § 16-15-732 because the Defendants never filed an answer expressly setting forth any of the legal justifications for removal that are identified in the removal statute. *Burgess I*, 2023 WL 142392, at \*5. We rejected Mr. Burgess's contention, holding that it was not necessary for the defendants to file an answer expressly setting forth the legal justifications listed in the statute. Rather, we concluded that the case was properly removed from the general sessions court because Mr. Fowler's affidavit, filed in support of the motion to remove, provided sufficient information to satisfy the requirements of Tenn. Code Ann. § 16-15-732. *Id.* at \*6.

Though Mr. Burgess now attempts to reframe the issue by labeling it "statutory intent," a thorough examination of his argument on this issue reveals that he presents nothing new. He merely seeks to relitigate the removal issue previously determined in *Burgess I*. His argument here, as it was in the first appeal, is that the case should not have been removed from the general sessions court because the Defendants never filed an

answer articulating any of the legal justifications for removal set forth in Tenn. Code Ann. § 16-15-732. Thus, he argues that removal under Tenn. Code Ann. § 16-15-732 was improper. Because we addressed this issue in *Burgess I* and none of the limited circumstances recognized by the Supreme Court are present in this case, the law of the case doctrine also prohibits us from reconsidering this issue.

II.    Sanctions and costs

Mr. Burgess next raises several issues related to his motions for sanctions and costs against Mr. Fowler, and his motion for sanctions and costs against Mr. Cole and Judge Binkley. We address each in turn.

A. Against Mr. Fowler

1. Sanctions for Mr. Fowler's affidavit filed in support of the motion for removal

Mr. Burgess argues that the trial court should have granted his request for inherent authority sanctions against Mr. Fowler in relation to the affidavit Mr. Fowler filed in support of the motion for removal.[4] The Tennessee Supreme Court has explained a court's inherent authority to sanction as follows:

> Completely aside from [Tenn. R. Civ. P.] 11, the courts of this state have, under the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner. *Cf.*, *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988); *Oliveri v. Thompson*, 803 F.2d 1265 (2nd Cir. 1986); *Healey v. Chelsea Resources Ltd.*, 133 F.R.D. 449, 455 (S.D. N.Y. 1990). We note in this regard that it has traditionally been the province of the courts to set standards for the bar and that an attorney acts not only as a client's representative, but also as an officer of the court and, accordingly, has a duty to serve both masters. *Business Guides*, 111 S.Ct. at 940. "Disciplinary powers which English and American courts have for centuries possessed over members of the bar [are] incident to their

---

[4] In the motion for sanctions at issue here, Mr. Burgess also sought inherent authority sanctions against Mr. Fowler's co-counsel, Benjamin Goldammer, and the law firm at which Mr. Fowler and Mr. Goldammer were partners, Kay Griffin, PLLC ("Kay Griffin"). Mr. Burgess alleged that Mr. Goldammer and Kay Griffin were subject to the inherent authority sanctions as well because Mr. Fowler acted on behalf of Mr. Goldammer and on behalf of Kay Griffin when he filed the affidavit supporting the motion for removal. Because the court concluded that Mr. Fowler did not act in bad faith or recklessly when he filed his affidavit, the court denied the request for sanctions against Mr. Goldammer and Kay Griffin. Though the notice of appeal form filed by Mr. Burgess includes Mr. Goldammer and Kay Griffin as defendants, his arguments focus on Mr. Fowler. Neither Mr. Goldammer nor Kay Griffin filed an appellate brief.

broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied." *Id.*

*Andrews v. Bible*, 812 S.W.2d 284, 291 (Tenn. 1991).

The conduct Mr. Burgess challenges relates to the removal statute, which states, in pertinent part, as follows: "If the general sessions judge finds that a defendant's defense is substantial, complex or expensive to present, and that the defendant has posted a sufficient cost bond, the judge shall order the action removed to the court that would have jurisdiction of an appeal if the action had been tried in general sessions court." Tenn. Code Ann. § 16-15-732(c)(1). Here, the general sessions court ordered the case removed to the circuit court pursuant to that statutory provision based on Mr. Fowler's affidavit. As pertinent to this case, Mr. Fowler's affidavit contains the following statements:

> 5. HOA has a substantial defense to this action, which will be of such a complex and expensive nature (and amount) that the interest of justice require that the HOA not be required to present the defense at the general sessions court level. The grounds of the defense and the reasons why I believe it to be sufficiently substantial, complex, and expensive to merit the removal of the case are set forth below:
> 6. In addition, HOA has compulsory counterclaims which include causes of action for (1) an injunction, and (2) declaratory judgment to determine the rights, status, and legal relations of the parties.

According to Mr. Burgess, Mr. Fowler's failure to file on behalf of the Defendants the alleged compulsory counterclaims for injunctive and declaratory relief amounted to "bad faith" and "reckless conduct." Furthermore, Mr. Burgess contends, the trial court's findings in the declaratory judgment order show that the Defendants had no plausible compulsory counterclaim for injunctive or declaratory relief; ergo, Mr. Fowler's affidavit was perjurious, misleading, and "nothing short of bad faith."

To determine whether Mr. Fowler acted in "bad faith" or in a "reckless manner," we begin with the definitions of those terms. "Bad faith" means "[d]ishonesty of belief, purpose, or motive." *Bad faith*, BLACK'S LAW DICTIONARY (12th ed. 2024). "Reckless" is defined as "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless, rash." *Reckless*, BLACK'S LAW DICTIONARY (12th ed. 2024). It is conduct that "is much more than mere negligence; it is a gross deviation from what a reasonable person would do." *Id.*

A thorough review of the record reveals no evidence that Mr. Fowler possessed a dishonest belief, purpose, or motive when he asserted in the affidavit that the Defendants had a substantial, complex, and expensive defense. Indeed, the record shows that the

numerous issues raised by Mr. Burgess were substantial and complex, and that the defendants were required to prepare an appropriate defense. As the trial court pointed out, the record in this case is voluminous: the parties filed at least 760 pleadings, motions, and responses in the trial court, the court issued approximately 101 orders, and there were approximately twelve filings/orders entered in this Court. The sheer size of the record shows that this case could not, under any circumstances, have remained in the general sessions court.

The record also reveals no evidence that Mr. Fowler was acting in bad faith when he stated in his affidavit that the Defendants had compulsory counterclaims including a claim for an injunction and/or a declaratory judgment. Mr. Burgess hangs his hat on the fact that Mr. Fowler never filed an answer on behalf of his client that asserted the purported counterclaims. Contrary to Mr. Burgess's assertion, this fact does not, by itself, show that Mr. Fowler was dishonest in stating that he believed the Defendants had those claims. All it suggests is that the defense changed its strategy as the litigation progressed. We also reject Mr. Burgess's contention that the trial court's declaratory judgment order establishes that Mr. Fowler's affidavit was perjurious and misleading. Though Mr. Burgess correctly asserts that the trial court declared that he had not violated the CCRs, he incorrectly asserts that the court's findings show that there was "no plausible argument that justifie[d] Mr. Fowler's motion to remove/affidavit and the arguments/claims therein." We have thoroughly reviewed the trial court's declaratory judgment order and find no such findings, either express or implied. We, therefore, agree with the trial court's conclusion that Mr. Fowler did not pursue removal of the case in bad faith.

The question then is whether Mr. Fowler conducted himself in a "reckless manner" in pursuing the removal and later changing the defense strategy by not seeking the purported counterclaims. Because a court's inherent power to sanction is incident to the court's responsibility to maintain the standards of professional conduct, we, like the trial court, find the rules of professional conduct instructive in determining whether Mr. Fowler's conduct was a "gross deviation from what a reasonable person would do." *Id.* We agree with the trial court's determination that the rules of professional responsibility allowed Mr. Fowler's conduct in pursuing the removal and then changing the defense's strategy by not seeking the purported counterclaims. For instance, Rule of Professional Conduct 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." TENN. SUP. CT. R. 8, RPC 1.3. This rule requires that a lawyer "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. A lawyer is not bound, however, to press for every advantage that might be realized for a client." TENN. SUP. CT. R. 8, RPC 1.3, cmt. 1. Rather, "a lawyer may have authority to exercise professional discretion in determining the means by which a matter should be pursued." *Id.*

Similarly, Rule of Professional Conduct 1.2 states that, "[s]ubject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of

representation and, as required by RPC 1.4, shall consult with the client about the means by which the client's objectives are to be accomplished." TENN. SUP. CT. R. 8, RPC 1.2. This means that the client has "the ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations." TENN. SUP. CT. R. 8, RPC 1.2, cmt. 1. To pursue the client's objectives, "the lawyer shall consult with the client as required by RPC 1.4(a)(2) and may take such action as is impliedly authorized to carry out the representation." *Id.* Based on the foregoing, we agree with the trial court's conclusion that Mr. Fowler did not conduct himself in a "reckless manner" when he pursued removal and later changed the defense strategy by not seeking the purported counterclaims. We conclude that the trial court did not abuse its discretion in denying Mr. Burgess's motion for inherent authority sanctions in relation to the affidavit Mr. Fowler filed in support of the motion for removal.[5]

> 2. Sanctions and costs for Mr. Fowler's response to the motion for sanctions and costs stemming from Judge Binkley's motion for entry of a final judgment

Mr. Burgess next contends that the trial court abused its discretion in denying his request for costs and inherent authority sanctions against Mr. Fowler in relation to Mr. Fowler's response to the motion seeking sanctions and costs for Judge Binkley's motion for entry of a final judgment in the underlying case against the HOA. We discern that Mr. Burgess's argument here is that Mr. Fowler acted in "bad faith" or in a "reckless manner" by filing his response to the motion because it constituted an "unauthorized" representation and defense of Judge Binkley. Mr. Burgess is correct that Mr. Fowler was not a party and no longer represented a party when he filed the response, but we disagree that he filed the response on behalf of and in defense of Judge Binkley. A thorough review of Mr. Fowler's response shows that he filed it as a precautionary measure because he believed that Mr. Burgess's motion for sanctions was vague about against whom Mr. Burgess sought sanctions. Notably, Mr. Fowler began his response by stating that he was filing it "in an abundance of caution" and then asserted that he should not be sanctioned because he was no longer involved in the case. Given that Mr. Burgess included Mr. Fowler on the

---

[5] After oral arguments before this Court, Mr. Burgess filed a motion requesting that we consider certain post-judgment facts pursuant to Tenn. R. App. P. 14, which gives this Court discretion to "consider facts concerning the action that occurred after judgment." The facts Mr. Burgess asks us to consider are that Mr. Fowler and Mr. Goldammer no longer work for Kay Griffin and that they did not file a notice in this Court informing us of "the changed circumstances." We discern that Mr. Burgess's argument is that we should consider these facts because they demonstrate that Mr. Fowler and Mr. Goldammer are "[d]eliberately withholding information that is directly relevant to the sanctions before the court." After reviewing Mr. Burgess's motion and accompanying documents, we do not believe these changed circumstances "ha[ve] any bearing on the positions of the parties in this lawsuit" and "the inclusion of these facts in our consideration would not have altered the outcome of this appeal in any way as to any issue before us." *Haiser v. Haines*, No. E2013-02350-COA-R3-CV, 2014 WL 7010723, at *6 (Tenn. Ct. App. Dec. 12, 2014). As such, we deny Mr. Burgess's motion to consider these additional facts.

certificate of service for the motion for sanctions at issue here and that, throughout this case, Mr. Burgess has repeatedly sought sanctions against Mr. Fowler and the law firm he worked for, we agree with the trial court's finding that Mr. Fowler did not act in bad faith or in a reckless manner when he responded to the motion. Because Mr. Burgess provides no reason for an award of his costs in responding to Mr. Fowler's response other than his unsuccessful argument that Mr. Fowler's response constituted bad faith or reckless conduct, we discern no abuse of discretion in the trial court's decision not to award Mr. Burgess his requested costs. We affirm the trial court's denial of Mr. Burgess's request for sanctions and costs against Mr. Fowler for filing his response to the motion for entry of a final judgment.

### B. Against Judge Binkley and Mr. Cole

Mr. Burgess next contends that Judge Morgan abused his discretion in denying the motions for costs and inherent authority sanctions for having to respond to the motion filed by Mr. Cole on behalf of Judge Binkley requesting entry of a final judgment. According to Mr. Burgess, costs and inherent authority sanctions were warranted because the motion was moot due to a final judgment having already been entered in the underlying case. As such, Mr. Burgess argues, Mr. Cole's "sole purpose" in filing the "reckless" and "frivolous" motion "was delay and harassment."

Mr. Burgess supports his argument by pointing out that Mr. Cole admitted he was unaware of the status of the underlying case at the time he filed the motion. As previously mentioned in this opinion, Mr. Cole was retained to represent Judge Binkley for the limited purpose of opposing Mr. Burgess's attempt to add Judge Binkley as a party to the underlying case in the motion for leave to amend the complaint a fifth time. Because the motion for leave to amend the complaint was denied, Judge Binkley never became a party to the case, and Mr. Cole was never listed as counsel of record. Mr. Burgess also did not list Mr. Cole on his subsequent filings in the underlying case. As a result, Mr. Cole never received notice that a final order had been entered in the underlying case or that Mr. Burgess had filed an appeal. We reject Mr. Burgess's contention that Mr. Cole acted recklessly by not regularly checking the docket of a case to which his client was not a party, and we conclude that Judge Morgan did not abuse his discretion in finding that Mr. Cole did not act recklessly in filing the motion based on his reasonable belief that no final judgment had been entered in the underlying case. Therefore, we affirm Judge Morgan's determination that there was no basis to grant the request for costs and inherent authority sanctions.

### III. Recusal

Lastly, Mr. Burgess contends that the trial court erred in denying the motion to recuse Judge Binkley from ruling on Mr. Burgess's motion for inherent authority sanctions and costs against Mr. Fowler for the response Mr. Fowler filed to Mr. Burgess's motion

for costs and sanctions against Judge Binkley and Mr. Cole. For the reasons discussed below, we again must respectfully disagree.

Tennessee Supreme Court Rule 10B, section 1.01 provides the procedures a litigant must follow when seeking recusal of a trial judge. Section 1.01 states as follows:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal. The motion shall be filed no later than ten days before trial, absent a showing of good cause which must be supported by an affidavit. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A party who is represented by counsel is not permitted to file a pro se motion under this rule. Any subsequent motion under this section filed in the same case must state, with specificity, substantially different factual and legal grounds than those relied upon in support of a prior motion filed under this section. If a party fails to satisfy this requirement, the subsequent motion may be deemed repetitive and summarily denied as provided in section 1.03.

TENN. SUP. CT. R. 10B, § 1.01. The first sentence provides two key elements for seeking a recusal. First, a litigant must file a written motion for recusal. Second, the litigant must file the written motion "promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." *Id.* "Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (quoting *Holmes v. Eason*, 76 Tenn. (8 Lea) 754, 757 (Tenn. 1882)). A delay in asserting the right to an impartial judge will result "in a waiver of a party's right to question a judge's impartiality." *Id.*

A thorough review of the record shows that, when Mr. Burgess filed the motion for inherent authority sanctions and costs against Mr. Fowler, he did not file a written motion requesting the recusal of Judge Binkley. Two days after Judge Binkley entered the June 5, 2024 order denying the motion, Mr. Burgess filed a motion to alter or amend the June 5, 2024 order. Mr. Burgess again did not file a written motion requesting the recusal of Judge Binkley with the motion to alter or amend. Indeed, Mr. Burgess waited nearly a month after the order denying the motion to alter or amend the June 5, 2024 order was filed to file his

- 14 -

motion titled "Motion for Assignment," seeking Judge Binkley's recusal from ruling on the motion for inherent authority sanctions and costs against Mr. Fowler. Because Mr. Burgess did not file the recusal motion promptly, we agree with the trial court's conclusion that the recusal issue was waived.

We also note that Mr. Burgess's motion failed to satisfy the requirements in section 1.01 that the motion "be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge" and that it "affirmatively state that it is not being presented for any improper purpose." TENN. SUP. CT. R. 10B, § 1.01. Compliance with these requirements is mandatory, and the failure to comply with them provides a basis for denial of a motion to recuse. *Beaman v. Beaman*, No. M2018-01651-COA-T10B-CV, 2018 WL 5099778, at \*13 (Tenn. Ct. App. Oct. 19, 2018). For the foregoing reasons, we affirm the trial court's denial of the motion to recuse.

CONCLUSION

The judgments of the trial court and of Judge Morgan are affirmed. Costs of this appeal are assessed against the appellant, Monsieur Shawnellias Burgess, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE