FILED

04/21/2026

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2025 Session

## MICHAEL ALAN GORDON v. HEATHER ELIZABETH GORDON

**Appeal from the Circuit Court for Davidson County**
**No. 20D-1111      Phillip R. Robinson, Judge**

_____

**No. M2024-00917-COA-R3-CV**

_____

Husband and Wife both sought a divorce, with each attributing fault to the other. During the divorce process, Wife alleged to the police, the Department of Children's Services, and Husband's military employer that Husband had abused her and their child. Husband denied the allegations and responded with a petition to hold Wife in criminal contempt for making false allegations of abuse. The contempt petition and the military investigation into Wife's claims remained open at the time of Wife's deposition. Wife refused, allegedly based on these open matters, to answer questions at her deposition, pleading the Fifth Amendment. The deposition was relocated to the courthouse, where the trial court held an impromptu hearing on the matter. During the hearing, the judge informed Wife that her refusal to answer questions could result in her being held in civil contempt. However, instead of holding Wife in civil contempt, with no warning, the trial court struck Wife's pleadings and entered a default judgment. Addressing Husband's pleadings and testimony thereupon, the trial court thereafter entered a final order dividing the parties' property and fashioning a parenting plan. Wife appealed, arguing, among other things, that the sanctions of striking her pleadings and issuing a default judgment were improper. Because we conclude that Wife had insufficient notice, we vacate the trial court's sanctions order and remand the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;
Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and W. NEAL MCBRAYER, JJ., joined.

Heather Elizabeth Gordon, Goodlettsville, Tennessee, pro se.

Trudy Bloodworth, Nashville, Tennessee, for the appellee, Michael Alan Gordon.

# OPINION

## I.

After nearly 11 years of marriage, Michael Alan Gordon (Husband) filed for divorce from Heather Elizabeth Gordon (Wife). Wife responded with a counter-complaint. The divorce proceedings became contentious. Each party alleged that the other was at fault. Husband, who was stationed in Florida due to his service in the United States Air Force, asserted that Wife had engaged in inappropriate marital conduct. He also alleged that Wife, who remained in Tennessee, was failing to pay the mortgage on or care for the marital home with money he sent her. Wife alleged that Husband was guilty of both inappropriate marital conduct and adultery. Additionally, she sought significant alimony, asserting that she was unable to work. Husband and Wife disagreed as to the amount of parenting time Husband should receive with their minor child, who had remained in Tennessee with Wife.

During the divorce process, Wife made numerous allegations of abuse against Husband before a variety of officials. Multiple individuals before whom these allegations were advanced concluded that they were false. According to Husband, the military began an investigation into him after Wife requested a wellness check on him and the child shortly after the start of his first parenting weekend after filing for divorce. At the conclusion of that parenting time, Wife also then filed a report with the Tennessee Department of Children's Services alleging that Husband physically abused their child. She also spoke with police officers in Tennessee and called the sheriff of the Florida county where Husband resided. Additionally, she filed for an order of protection against Husband.

Investigations were conducted, and no action was taken against Husband. Husband was never arrested in either Tennessee or Florida. The Florida county sheriff's office found that Husband "does not appear to be unfit or abusive towards [the child] and is obviously careful of his actions" but that Wife, approximately two months after making the report, "ha[d] yet to return [the investigator's] phone calls or attempts at contacting her." The investigating detective testified on Husband's behalf at the order of protection hearing regarding her conclusion that Wife's allegation of child abuse was "unfounded and extremely documented as such." No order of protection was granted.

Around the time of the conclusion of the order of protection hearing, Husband learned that the military had begun another investigation into him. This time the investigation was based on allegations of child abuse, physical and sexual assault of Wife, and adultery, in violation of military rules and regulations. During the pendency of this second military investigation, Husband was suspended from the aviation service, his monthly "flight pay" was docked, and a temporary military protective order prevented Husband from all contact with his child. Husband responded with a petition to hold Wife in criminal contempt for, among other things, willfully and intentionally making false allegations to his employer.

The parties proceeded with discovery in the divorce proceedings while the military investigation and the contempt petition remained pending. At Wife's deposition, she refused to answer most of the questions posed to her, allegedly based on these open matters. Wife's recalcitrance led Husband's attorney to place a phone call to the trial judge to "get guidance." The trial judge directed the parties to relocate the deposition to the courthouse. Although the appellate record does not contain a transcript of the deposition or the hearing that followed, we are able to understand what happened during the proceeding from the court's orders, from discussions of the proceedings in transcripts from the final hearing, and from the parties' later filings addressing what occurred.

Husband explained what happened at Wife's deposition by testifying that Wife "pled the Fifth about her name, her address, her date of birth, her social security number. Anything and everything that she was asked, she said, 'Well, I invoke my Fifth Amendment right.'" Some of the questions Wife refused to answer related to her claims of adultery and to her claim for alimony. Wife was told that the Fifth Amendment and the existence of the military proceedings did not operate to protect her from the requirement to answer all questions posed to her at the civil deposition.[1] Husband stated that Wife's "attorney was even encouraging her" to answer, telling her that she "ha[d] to answer these questions." After the deposition moved to the courthouse, Wife continued to "refuse[] to answer" most questions.

On at least three occasions during the deposition, the trial judge ordered Wife to answer questions. The trial judge also informed Wife several times that she might be held in civil contempt for her refusal to answer questions. Wife, however, told the judge that

---

[1] As previously stated by the Tennessee Court of Criminal Appeals,

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." *See also* Tenn. R. Evid. 501 ("Except as otherwise provided by constitution, . . . no person has a privilege to . . . refuse to disclose any matter."). This Amendment and the corresponding rule permit a witness to refuse to disclose any matter upon assertion of the right against self-incrimination. However, "a witness has no right to refuse to answer any and every question asked him in a judicial proceeding. He has only the right to invoke the Fifth Amendment with respect to matters that will incriminate him." The trial court has the discretionary authority to determine "whether a witness has properly invoked his fifth amendment right against self-incrimination."

*State v. Lagrone*, No. E2014-02402-CCA-R3-CD, 2016 WL 5667514, at *18 (Tenn. Crim. App. Sept. 30, 2016) (internal citations and quotations omitted); *see Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 462 (Tenn. 1995) ("Although the privilege is available in a civil suit, it does not protect witnesses in circumstances in which the answer may subject them only to civil liabilities."); *Zollicoffer v. Turney*, 14 Tenn. 297, 301 (1834) (explaining that a witness cannot "refuse to answer a question relevant to the matter in issue" on the sole basis that the answer may expose the witness to civil consequence).

she would not answer because she was "a witness in a federal [military] investigation" into Husband, and she felt that the questions posed in the divorce deposition amounted to "witness tampering." She persisted in this course of conduct even when informed by the trial judge to the contrary. When her conduct at the deposition was brought up in a later hearing, she again told the judge that she "think[s] this is witness interrogation and a violation of federal law," complaining that she felt that she was "being penalized as a victim of crime for speaking to the police." Wife maintained that she had "answered the questions to the best of [her] ability" under the circumstances but stated that "[t]here is [such] a thing as Battered Woman Syndrome." She testified that she was represented by other counsel in the military investigation into Husband and that the military counsel had advised her "to answer the [deposition] questions in a broad sense, but not in detail."

Despite the trial court's repeated admonitions that Wife risked being held in civil contempt for her conduct at the deposition, the court did not, ultimately, hold Wife in contempt. The trial court instead sanctioned her — without warning that it might do so — by striking her pleadings and awarding Husband a default judgment. There was no pending motion for sanctions, and the proceedings occurred the same day as her recalcitrancy, as an ad hoc response. In a later hearing, the trial judge explained that he decided not to hold Wife in civil contempt after he "got the feeling [Wife] kind of wanted to go to jail and be a martyr in this case, so to speak." The trial judge therefore "went back there, looked at the rule [governing sanctions], and decided striking the pleadings was the way to go." He also "viewed [the ordered sanctions] as a less drastic alternative to putting her in jail." Husband's deposition, which was scheduled to take place following Wife's deposition, was cancelled.

Wife hired new counsel for the multi-day divorce trial that occurred upon Husband's pleadings and that addressed evidence presented in accordance therewith. Her new attorney filed a *Motion for Reconsideration of Order to Strike Pleadings and Enter Default Judgment*. Therein, Wife sought reconsideration of the sanctions on the basis that she "was never given any notice that the striking of her pleadings was a possibility," as "[t]here was no motion filed to strike Wife's pleadings" and the court had only "told the Wife that she could have been held in contempt" as a consequence for her failure to answer. Additionally, she argued that she properly asserted her Fifth Amendment right against self-incrimination as to the questions regarding her claim that Husband committed adultery, as the then-pending petition for criminal contempt was based in part on the claim that Wife made false allegations of adultery to Husband's military employer.

During the hearing on the motion, the trial judge agreed that he "underst[ood] her claiming her Fifth Amendment right . . . as relates to certain questions," but reminded Wife that the Fifth Amendment "doesn't cover everything," but only those statements that could expose a deponent to criminal liability. As for the notice issue, the judge stated, "I mean, Rule 37 is just an order which includes contempt as one of the options, as one of several options. I don't think I have to give notice . . .," especially in the situation in which "you're

- 4 -

in court here and th[ere] is a ruling from the bench when the Court has repeatedly told her to answer questions to the deposition." The court denied Wife's motion for reconsideration, citing her "level of disrespect and . . . blatant obstruction of the discovery proceedings." Following this, Husband dismissed his petition for criminal contempt.

At the conclusion of the final hearing, the court issued a final decree in which it granted Husband a divorce on the grounds of inappropriate marital conduct by Wife. It divided the marital estate between the parties. Because Wife's pleadings had been struck, neither party had a request for alimony before the court. After considering the best interests of the child, the court fashioned a parenting plan granting Husband 365 days with the minor child and ordered Wife to pay monthly child support of $227. It also awarded Husband the following monetary judgments against Wife: $1,200 for Wife's "willful failure to honestly participate in discovery and depositions in this cause"; $4,508.70 "as a result of [Wife's] false allegations of physical and sexual abuse in furtherance of litigation pursuant to Tenn. Code Ann. § 36-4-135"; $7,885.50 "as the prevailing party pursuant to Tenn. Code Ann. § 36-5-103(c) based upon the adjudication of custody of the minor child in his favor"; and $5,504 plus statutory interest for retroactive child support.

Wife appealed. Wife sets forth her issues on appeal as follows:

A. Whether the court abused its discretion in entering a default judgment against [Wife], AND, in refusing to set it aside . . . [?]

B. Whether the court abused its discretion changing custody from [Wife] to [Husband] on November 9, 2021, and then again, naming [Husband] the Primary Residential Paren[t]?

C. Whether [the] court abused its discretion and applied the incorrect legal standard when awarding [Wife] only 20 percent of [Husband's] military retirement[?]

D. Whether the Final Order was the independent judgment of the court?

E. Whether the Court abused its discretion when awarding [Husband] $83,000[?]

II.

Wife is proceeding pro se in this appeal. Pro se litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015). Courts should be mindful that pro se litigants often lack legal training and may be unfamiliar with the justice system. *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015). Accordingly, courts should afford some degree of leeway in considering the briefing from a pro se litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App.

2003), and should consider the substance of the pro se litigant's filing. *Poursaied v. Tenn. Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021).

Pro se litigants may not, however, "shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). In considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or "dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel." *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). It is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

III.

The central issue on appeal in this case is whether the trial court abused its discretion by striking Wife's pleadings and by entering a default judgment as sanctions and, later, by denying Wife's motion to set aside these sanctions. Wife argues that the trial court abused its discretion by acting without proper notice when it imposed these sanctions and then again, subsequently, when it denied her motion to set aside the sanctions despite this lack of notice. Husband contends that the trial court properly sanctioned Wife based on her "clear pattern of discovery abuse, stonewalling, and unreasonable delay."

We review both a trial court's decision to grant sanctions and its decision not to set aside a nonfinal order for an abuse of discretion. *Caldwell v. Ruby Falls, LLC*, 674 S.W.3d 899, 908 (Tenn. Ct. App. 2023) (citing *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)); *Kelly v. Kelly*, No. M2023-00598-COA-R3-CV, 2025 WL 1178680, at *4 (Tenn. Ct. App. Apr. 23, 2025) (citing *Discover Bank v. Morgan*, 363 S.W.3d 479 (Tenn. 2012)). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015). In other words, discretionary decisions "are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Pegues v. Illinois Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008) (quoting *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)); *Ehsani v. Ehsani*, No. M2022-01819-COA-R3-CV, 2024 WL 301903, at *2 (Tenn. Ct. App. Jan. 26, 2024). "A discretionary decision will not stand if the trial court fails to apply the relevant statutory, legal, or procedural framework intended to guide its determination." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009) (citing *Pegues*, 288 S.W.3d at 353).

Tennessee Rule of Civil Procedure 37.02 provides that, where a party, a deponent, or any other person designated by the Rule fails to comply with a court order regarding discovery, the court "may make such orders in regard to the failure as are just." Tenn. R. Civ. P. 37.02. Rule 37.02 provides the following nonexclusive list of sanctions that may be imposed for noncompliance with discovery orders:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
>
> (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;
>
> (E) Where a party has failed to comply with an order under Rule 35.01 requiring the party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this rule, unless the party failing to comply shows that he or she is unable to produce such person for examination.
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Tenn. R. Civ. P. 37.02.

Wife argues the trial court abused its discretion by imposing sanctions against her pursuant to subsection Rule 37.02(C) because she was not served with notice prior to a hearing on those sanctions as required by Tennessee Rule of Civil Procedure 55.01. Rule 55.01 provides:

- 7 -

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default shall apply to the court. Except for cases where service was properly made by publication, *all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application*, regardless of whether the party has made an appearance in the action. . . . If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

Tenn. R. Civ. P. 55.01 (emphasis added).

Wife and Husband disagree over whether the Rule 55.01 notice provisions apply to default judgments awarded as sanctions under Rule 37.02. This court has previously considered the interplay between these rules in unpublished cases. Such unpublished decisions are persuasive but not mandatory authority. *Watts v. Watts*, 519 S.W.3d 572, 579 n.5 (Tenn. Ct. App. 2016); Tenn. Sup. Ct. R. 4(G)(1). For Husband's position to be correct, this court's prior unpublished decisions must be in error.

In *Frierson v. Johnson*, this court considered "whether the notice provisions of Tenn. R. Civ. P. 55.01 regarding default judgments apply to a default judgment issued pursuant to Tenn. R. Civ. P. 37.02 as a discovery sanction." No. M2006-02598-COA-R3-CV, 2008 WL 555721, at *5 n.1 (Tenn. Ct. App. Feb. 28, 2008). Based on language in Rule 55.01 stating that the notice requirements were applicable to "all parties against whom a default judgment is sought," this court concluded that they do.[2] *Id.*; *see* Tenn. R. Civ. P. 55.01. Later, in *Christy v. Christy*, this court cited the *Frierson* footnote in support of the proposition that "[t]he notice provisions of Tenn. R. Civ. P. 55.01 apply even when a default judgment is issued pursuant to Tenn. R. Civ. P. 37.02 as a sanction." No. M2021-

---

[2] The *Frierson* court cited *Burnette v. Sundeen* for the proposition that this court had previously applied a different part of Rule 55.01 in a case involving a default judgment obtained as a discovery sanction. *Frierson*, 2008 WL 555721, at *5 n.1. In *Burnette v. Sundeen*, a plaintiff moved for entry of a default judgment as a sanction under Rule 37.02, and the court granted the default along with $100,000 in unliquidated damages. 152 S.W.3d 1, 5 (Tenn. Ct. App. 2004). Determining that the plaintiff's motion did not put the defendants on notice that damages would be contemplated at the hearing, this court vacated the trial court's order as to the damages award. *Id.* at *4-*5.

00192-COA-R3-CV, 2022 WL 951254, at *5 (Tenn. Ct. App. Mar. 30, 2022). The *Christy* court, accordingly, vacated the trial court's judgment granting a plaintiff's request for default judgment on the basis that the defendant had provided evidence of non-receipt of notice that the plaintiff was seeking a default judgment, creating an issue of fact for the court to resolve, and because the defendant was not afforded a hearing before the default judgment was granted. *Id.* at *8.

Looking to other jurisdictions that have contemplated the applicability of the notice requirements of similar default judgment rules to a default judgment granted as a discovery sanction, there exists a sharply divided split of authority. Some state courts have explicitly applied their state's version of Rule 55.01 to their state's version of Rule 37.02. *See Cunningham v. Garruto*, 656 N.E.2d 392, 394 (Ohio 1995) ("It is our belief that the [Ohio Rule of Civil Procedure] 55(A) notice requirement must be complied with even when a default judgment is imposed as [an Ohio Rule of Civil Procedure] 37 sanction."); *Ruwart v. Wagner*, 880 P.2d 586, 591 (Wyo. 1994) ("[Wyoming Rule of Civil Procedure] 55(b)(2) applies to default judgments entered under [Wyoming Rule of Civil Procedure] 37. . . . A default judgment which fails to comply with [Wyoming Rule of Civil Procedure] 55(b)(2) violates due process and renders the default judgment void."); *Muck v. Stubblefield*, 682 P.2d 1237, 1239 (Colo. App. 1984) ("[S]ince entry of a default judgment is a drastic remedy, the [7 days] notice requirement of [Colorado Rule of Civil Procedure] 55(b)(2) must be scrupulously adhered to."); *Poleo v. Grandview Equities, Ltd.*, 143 Ariz. 130, 134 (Ariz. Ct. App. 1984) ("We hold that the party whose pleadings have been stricken as a sanction under [Arizona Rule of Civil Procedure] 37 must be given notice of the application for judgment [at least 3 days before the hearing] as required by Rule 55(b)(2) because that party has 'appeared' in the action.").

Other jurisdictions have concluded that the notice provisions of their default judgment rules do not apply to default judgments granted as sanctions. *See Nat'l Front Page, LLC v. State ex rel. Pryor*, 86 S.W.3d 848, 850 (Ark. 2002) ("[W]e have held that [Arkansas Rule of Civil Procedure] 55 requirements do not apply to Rule 37 sanctions."); *Crossley v. Moore*, 182 So. 3d 462, 467 (Miss. Ct. App. 2015) ("We find it was well within the chancellor's discretion to reject [a Mississippi Rule of Civil Procedure] 55 argument—mainly because Rule 55 had not been the procedural vehicle for entering the default. Instead, the default was the result of the Rule 37 discovery sanction."); *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 400-01 (Ind. Ct. App. 1997) ("Because Hatfield's dismissal was an involuntary dismissal [as a sanction] pursuant to [Indiana Rule of Trial Procedure] 37(B), the trial court was not required to follow the notice requirements applicable to default judgments.").

After reviewing the record and having considered the arguments presented, we conclude that it is unnecessary to determine whether the notice provisions of Tennessee Rule of Civil Procedure 55.01 apply to default judgments imposed as sanctions under Tennessee Rule of Civil Procedure 37.02. The process in the present case runs afoul of

even more foundational concerns as to proper notice in connection with the imposition of sanctions.

In the present case, Husband filed no written motion seeking sanctions, nor was written notice provided to Wife in any form indicating that sanctions were being sought against her. In fact, there was no written notice that any type of hearing would be occurring before the trial court. Rather, the hearing before the trial court emerged out of an ad hoc same day process stemming from Wife's recalcitrance to answer questions at her deposition. At this hearing, the trial court was not silent as to the potential sanction that it might impose if Wife persisted in not answering questions. Quite to the contrary, the trial court was clear in communicating with precision as to the sanction the court was considering imposing if Wife refused to answer questions. The trial court indicated that it was considering holding her in civil contempt of court. Instead of doing so, the trial court ultimately surprised Wife by striking her pleadings and entering a default judgment against her without having afforded any notice that it was considering doing so.

This is an unusual confluence of events. In the present case, there was a lack of any advance written notice that a hearing would be occurring or that sanctions were being sought. The trial court was not silent though as to potential sanctions for failure to comply with the court's orders; rather, the trial court indicated precisely what the consequences could be for noncompliance. However, the trial court ultimately imposed a qualitatively different — and not clearly lesser — sanction than the one it had threatened to impose.

A default judgment is expressly permitted under Rule 37.02(C). Nevertheless, dismissal or issuance of a default judgment is regarded as a harsh and extreme sanction for discovery violations. *See*, *e.g.*, *Tatham v. Bridgestone Americas Holding*, *Inc.*, 473 S.W.3d 734, 747 (Tenn. 2015); *Murray v. Christian Methodist Episcopal Church*, 153 S.W.3d 371, 378 (Tenn. Ct. App. 2004); *Shahrdar v. Glob. Hous.*, *Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998); *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). In determining whether a trial court acted properly in imposing sanctions under Rule 37, this court has repeatedly indicated that the absence of notice renders sanctions improper. *See*, *e.g.*, *Marshall v. Marshall*, No. M2009-02463-COA-R3-CV, 2010 WL 4670982, at *4 (Tenn. Ct. App. Nov. 16, 2010); *Burnette*, 152 S.W.3d at 5; *cf. Wise v. Bercu*, No. M2017-01277-COA-R3-CV, 2019 WL 4747187, at *4 (Tenn. Ct. App. Sept. 30, 2019).

In the present case, even assuming for purposes of argument that Husband is correct and this court's previous unpublished decisions incorporating the Rule 55.01 requirements into Rule 37 are in error, and even further assuming no written motion seeking sanctions, no prior written notice of the hearing, or any notice of specific potential sanctions either written or oral are required for imposition of such sanctions, we still could not find proper notice as to the sanctions in this case. That is because in this case, in addition to the aforementioned, the trial court affirmatively indicated that the sanction it was considering was civil contempt. Even if we were to assume for purposes of argument that the mere

- 10 -

existence of Rule 37.02(C) is, in general, sufficient notice of the possibility of imposition of striking pleadings or awarding a default judgment sanction, the Rule itself still could not serve that role under the unusual circumstances of the present case. Ultimately, despite the general lack of notice in this case and despite having apprised Wife that it was a different sanction that the court would impose upon her for noncompliance, the trial court struck without notice Wife's pleadings and entered a default judgment. These sanctions are of a qualitatively different nature than the threatened sanction of civil contempt and are not clearly lesser sanctions than the sanction the trial court threatened to impose. The court's actions took place in the absence of any written motion for sanctions or notice as to potential sanctions, including even a written reference to Rule 37.02. Accordingly, under the unusual circumstances of this case, even if we could travel along the route of argumentation presented by Husband, we simply cannot ultimately conclude that notice in this case was proper.

Accordingly, we vacate the trial court's order imposing sanctions striking Wife's pleadings and entering a default judgment. Because this determination results in the reinstatement of Wife's pleadings, including her claims as related to the parties' parenting plan, the division of property, and alimony, we must also vacate the final order and remand for further proceedings. Wife's remaining issues relating to the parties' parenting plan, the division of property, and the final order are therefore pretermitted. Until the court renders its decision on remand or issues an alternative temporary plan, the current parenting plan will remain in place as a temporary plan.

IV.

For the aforementioned reasons, we vacate the judgment of the Circuit Court for Davidson County. Costs of this appeal are taxed to the appellee, Michael Gordon, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE